**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.<br><br>             Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNATIONAL TRADE<br>   COMMISSION,<br><br>             Defendant,<br><br>and<br><br>UNITED STATES STEEL CORPORATION *et al.*,<br><br>             Defendant-intervenors. | **22-cv-00350** |

## RESPONSE OF EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş. IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

David L. Simon
Mark B. Lehnardt

Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, DC 20036
Tel.:  (202)481-9000
Email:  DLSimon@DLSimon.com

Date: July 28, 2023                   *Counsel to Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ..............................................................................................................1

    I.    Factual Background.............................................................................................3

    II.   Legal Background ............................................................................................10

STANDARD OF REVIEW ...............................................................................................13

ARGUMENT ...................................................................................................................16

    I.    The Expected Evaluation Underlying Erdemir's CCR Request Is
         Specifically Approved By The SAA And Supports A Claim Upon Which
         Relief May Be Granted .....................................................................................17

    II.   Erdemir's Claim Was Not Rendered Moot By The Commission's
         Determination To Conduct A Full Sunset Review .........................................23

CONCLUSION.................................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*AK Steel Corp. v. United States*, 226 F.3d 1361 (Fed. Cir. 2000) ................................12

*Amcor Flexibles Singen GmbH v. United States*, 425 F. Supp. 3d 1287 (Ct. Int'l
    Trade 2020) ........................................................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..............14

*Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 563 U.S.
    776, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011) ................................................27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929
    (2007) ................................................................................................................13

*Board of Trustees of the Leland Stanford Junior University v. Roche Molecular
    Systems, Inc.*, 563 U.S. 776, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011) ..................11

*Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933 (Fed. Cir.
    1990) ................................................................................................................18

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S. Ct. 239, 9 L.
    Ed. 2d 207 (1962) ...............................................................................................2

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837,
    104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ..........................................................11

*Clearon Corp. v. United States*, 34 CIT 970, 717 F. Supp. 2d 1366 (2005) ............13

*Duncan v. Walker*, 533 U.S. 167, 150 L. Ed. 2d 251, 121 S. Ct. 2120 (2001) .........11

*Eveready Battery Co., Inc. v. United States*, 23 CIT 896, 77 F. Supp. 2d 1327
    (1999) ........................................................................................................ passim

*FAG Italia S.p.A. v. United States*, 291 F.3d 806 (Fed. Cir. 2002) ...........................22

*Gould, Inc. v. United States*, 935 F.2d 1271 (Fed. Cir. 1991) ....................................14

*Hall v. Beals*, 396 U.S. 45, 90 S. Ct. 200, 24 L. Ed. 2d 214 (1969) ..........................13

*Halperin Shipping Co., Inc. v. United States*, 13 CIT 465 (1989) ...............................14

*Hoed v. U.S. Sec'y of Agric.*, 32 CIT 63, 533 F. Supp. 2d 1354 (2008) ....................14

*Int'l Custom Prods. v. United States*, 32 CIT 302, 549 F. Supp. 2d 1384 (2008)......14

*La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986).................................................................................................................23

*Lincoln v. Vigil*, 508 U.S 182, 113 S. Ct. 2024, 124 L. Ed. 2d 101 (1993) .........................16, 23

*Mid Continent Nail Corp. v. United States*, 37 CIT 1313, 949 F. Supp. 2d 1247 (2013).................................................................................................................11, 27

*Nielsen v. Preap*, 139 S. Ct. 954, 203 L. Ed. 2d 333 (2019) ...........................................12

*SEC v. Chenery Corp.*, 332 U.S. 194, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) ...........................2

*Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352 (Fed. Cir. 2008).......................21

*United States v. Ford Motor Co.*, 497 F.3d 1331 (Fed. Cir. 2007).............................................14

*Usinor Industeel, S.A. v. United States*, 26 CIT 1402 (2002) ...............................................18

*Usinor Industeel, S.A. v. United States*, 27 CIT 238 (2003) ...............................................18

## Statutes

19 U.S.C § 1675(b)(1) ..............................................................................................10, 22

19 U.S.C § 1675(b)(2)(A) .........................................................................................10, 23

19 U.S.C § 1675(b)(3)(A) ...............................................................................................10

19 U.S.C § 1675(b)(4) ..............................................................................................10, 26

19 U.S.C § 1675(d)(1) .....................................................................................................11

19 U.S.C § 1675(d)(3) .....................................................................................................11

19 U.S.C § 3512(d) ......................................................................................................14, 23

19 U.S.C §§ 3511(a)(2) ...............................................................................................14, 23

19 U.S.C. § 1675(c)(1)................................................................................................23, 29

19 U.S.C. § 1675a(a)(7)...................................................................................................28

**Other Authorities**

2A N. Singer & J. Singer, SUTHERLAND STATUTORY CONSTRUCTION § 46.7 (7th ed. 2007) ........................................................................................................11

*Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act*, H.R. Doc. No. 103-316, vol.1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ......................................................................... passim

**Regulations**

19 C.F.R. § 207.45(a)....................................................................................................6

19 C.F.R. § 207.45(b)........................................................................................7, 10, 26

19 C.F.R. § 207.45(c)........................................................................................7, 10, 26

**Administrative Determinations**

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Int'l Trade Comm'n Sept. 29, 2016)..................................................................................4

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Final), USITC Pub. 4638 (Sept. 2016)....................................4

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom: Continuation of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and United Kingdom) and Countervailing Duty Order (Korea) and Revocation of Antidumping and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't Commerce Dec. 22, 2022)...........................................................................9

*Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016) ("*AD Order*")........................................................................................................................5

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey*, Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products

iv

From the Republic of Turkey: Final Affirmative Determination, 81 Fed. Reg. 53,433, 53,434 (Dep't of Commerce Aug ...................................................................3

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53,428, 53,429 (Dep't of Commerce Aug. 12, 2016) .........................................4

*Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15, 2020) .........................................................................................6

*Electrolytic Manganese Dioxide from Greece and Japan*, 63 Fed. Reg. 30,254 (Int'l Trade Comm'n June 3, 1998) .......................................................24, 28

*Electrolytic Manganese Dioxide from Greece and Japan, Dismissal of Request for Institution of a Section 751(b) Review Investigation*, 63 Fed. Reg. 43,192 (Int'l Trade Comm'n Aug. 12, 1998) .................................................24, 26

*Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73,331 (Int'l Trade Comm'n Nov. 29, 2022) .................................................................8, 22, 25, 26

*Hot-Rolled Steel Flat Products From Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination*, 86 Fed. Reg. 68,512 (Int'l Trade Comm'n Dec. 2, 2021) .........................................................................................7, 25

*Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan: Initiation of Changed Circumstances Review*, 70 Fed. Reg. 24,514 (Dep't of Commerce May 10, 2005). ..........................22

*Notice of Commission Determination To Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom*, 87 Fed. Reg. 3123 (Int'l Trade Comm'n Jan. 20, 2022) .................................................8

## INTRODUCTION

This is the response of Plaintiff, Ereğli Demir ve Çelik Fabrikalari T.A.Ş. (Erdemir), to the motion to dismiss of Defendant U.S. International Trade Commission (Commission).

Erdemir's case, and its defense against the Commission's motion to dismiss, revolve around the provisions in the *Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act* ("*SAA*") that authorize the Commission to conduct a changed circumstances review to reconsider the injury determination of the original investigation under certain specific circumstances that match what has happened with hot-rolled steel from Turkiye.[1] Here, Turkish producer Çolakoğlu Dis Ticaret A.S. (Çolakoğlu) was excluded from the countervailing duty (CVD) investigation as unsubsidized, resulting in negligible Turkish subject imports in the Commission's injury investigation, and thus termination of the CVD investigation. In the antidumping (AD) investigation, Commerce initially calculated an above *de minimis* dumping margin for Çolakoğlu, thus Turkish subject imports remained above negligible in the Commission's injury investigation, and an AD order issued.  But on appeal of the AD investigation, Commerce was found to have acted unlawfully in calculating Çolakoğlu's dumping margin, and on judicial remand Commerce recalculated Çolakoğlu's dumping margin to zero, resulting in Çolakoğlu's exclusion from the antidumping duty order.  Had Commerce acted lawfully in the original antidumping investigation, Çolakoğlu would have been excluded from the AD investigation just as it was from the CVD investigation, Turkish subject imports would have been negligible in the Commission's AD injury investigation just as they were in the

---

[1] The U.S. State Department has recognized the request of the Turkish embassy to spell the country's name "Turkiye," and uses this spelling in formal diplomatic and bilateral contexts, and in public communications.  *Press Briefing*, Dep't of State (Jan. 5, 2023) https://www.state.gov/briefings/department-press-briefing-january-5-2023/.

*22-350 - Erdemir Response to Mot to Dismiss*

Commission's CVD injury investigation, and the AD investigation would have been terminated just as the CVD investigation was terminated.

Congress approved a changed circumstances review to address this situation.  The *SAA* sets forth a general rule precluding "challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin" which "could occur due to further proceedings … {including} judicial remand."  But the SAA also explains that the Commission "may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation if the party seeking such review establishes that it is warranted."  Erdemir highlighted this provision in its comments submitted in response to the Commission's invitation to comment on whether to initiate a CCR, because the circumstances approved by Congress in the *SAA* are the precise circumstances underlying Erdemir's CCR request.  *See* P.R.109*, Erdemir Cmts. on Institution of CCR*, at 8 & n.26, 11 & n.36, 18-19.

The Commission did not address this provision of the SAA in its denial of Erdemir's CCR request, and specifically declined to address issues raised in Erdemir's CCR request in the context of the sunset review.  Now, in its motion to dismiss, the Commission finally acknowledges that Erdemir relies on the provision of the *SAA*, *ITC Mot.* at 16, but again fails to address it – perhaps because it could only do so as *post hoc* rationalization.  *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962)) ("The courts may not accept . . . counsel's post hoc rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." (*Citing SEC v. Chenery Corp*., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947))).

The Commission argues that Erdemir's *SAA*-approved CCR was not authorized under the statute, and thus that this appeal should be dismissed for failing to state a claim upon which relief may be granted.  The Commission also argues that Erdemir's CCR request was mooted by the full sunset review, but the Commission declined to address in the sunset review the issue raised in Erdemir's *SAA*-approved CCR request.  This Court cannot ignore the *SAA*'s mandate specifically allowing the CCR Erdemir sought.  Thus, Erdemir raises a claim which was not mooted by the Commissions initiation of a full sunset review and for which the Court can grant relief through remand.  Accordingly, this Court should reject the Commission's motion to dismiss.

## I.      Factual Background

The factual background in this case revolves around the Commission's decision terminating the countervailing duty (CVD) investigation of hot-rolled steel from Turkiye upon finding subject imports from Turkiye negligible after imports from Turkish respondent, Çolakoğlu, were excluded as unsubsidized from total subject imports.  This background section first describes the events leading to Çolakoğlu's exclusion from the AD order and next describes Erdemir's efforts to persuade the Commission to reexamine its AD injury determination in light of the negligible volume of subject imports from Turkiye.

*The Investigations & Appeals.*  In the CVD investigation, the Department of Commerce (Commerce) calculated a *de minimis* subsidy margin on imports of Çolakoğlu.  *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433, 53,434-53,435 (Dep't of Commerce Aug. 12, 2016) ("*Turkiye CVD Final*").

In the AD investigation, Commerce calculated an above *de minimis* dumping margin for Çolakoğlu.  *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final*

*Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53,428, 53,429 (Dep't of Commerce Aug. 12, 2016) ("*Turkiye Final LTFV*").

Because Commerce found Çolakoğlu unsubsidized, the Commission, in its final injury analysis, excluded Çolakoğlu's unsubsidized imports from its universe of subject imports from Turkiye, and found that the volume of the remaining Turkish subsidized imports fell below negligible levels.  Accordingly, the Commission terminated the injury investigation of subsidized imports from Turkiye.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Int'l Trade Comm'n Sept. 29, 2016) ("*HRS ITC Notice*"); *see also, Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Final), USITC Pub. 4638 (Sept. 2016) ("*HRS ITC Final*"), at 1 & n.2, 3, 12-14 ("We consequently determine that subsidized subject imports from Turkey are negligible and terminate the countervailing duty investigation on hot-rolled steel from Turkey.").

Because Çolakoğlu was found to have an above *de minimis* dumping margin, the Commission included all Turkish imports as subject imports, found subject dumped imports from Turkiye were not negligible, and found material injury by reason of subject imports from Turkiye and other subject countries.  *See id.*, at 1, 3, 13 ("{I}mports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation. Hot-rolled steel imports from Turkey that are subject to the antidumping duty investigation were 7.4 percent of total imports during this period and therefore were above negligible levels.").

Consequently, Commerce entered an AD order on hot-rolled steel from Turkiye. *Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016) ("*AD Order*").

The Commission found subject imports from Turkiye, along with subject imports from all other subject countries, caused material injury to a domestic industry. *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), USITC Pub. 4638, at 3 (Sept. 2016). Commerce issued an antidumping duty order on October 3, 2016. *AD Order*, 81 Fed. Reg. 67,962.

The Domestic Interested Parties (DIPs) appealed the Commission's negative CVD injury determination, based on the negligibility of Turkish subject imports. This Court rejected all of DIPs arguments and affirmed the Commission's negligibility determination. *Nucor Corp. v. United States*, 296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018).

Çolakoğlu and Erdemir appealed Commerce's final determination of sales at less than fair value (the *Turkiye Final LTFV* and *AD Order*). For Çolakoğlu's appeal, this Court concluded that Commerce's decisions relating to duty drawback and the international freight expenses were unlawful as not supported by substantial evidence or reasoned explanations and, after three remands over four years, affirmed Commerce's redetermination on remand that Çolakoğlu's imports were not sold at less than fair value (that is, they were not dumped, they were fairly traded). *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F. Supp. 3d

1297, 1314-1320, 1328 (Ct. Int'l Trade 2018); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 357 F. Supp. 3d 1325, 1329-1334, 1336 (Ct. Int'l Trade 2018); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 415 F. Supp. 3d 1216, 1222-32 (Ct. Int'l Trade 2019); *Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2020) ("The changes resulted in an estimated weighted-average dumping margin of zero percent for Çolakoğlu and, thus, Çolakoğlu will be excluded from the relevant antidumping duty order.").

Commerce therefore excluded Çolakoğlu from the antidumping duty order retroactively to the original suspension of liquidation in the underlying investigation (*i.e.,* to the date of the original preliminary determination). *Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15, 2020) ("*Turkiye Partial Revocation*").

*The CCR Requests.*  The Commission's regulations state that a request for changed circumstances review (CCR) must "set forth a description of changed circumstances sufficient to warrant the institution of a review."  19 C.F.R. § 207.45(a).  Erdemir first requested a CCR via letter to the Commission on May 18, 2020.  P.R.1.  In that letter, Erdemir explained that this Court had affirmed a redetermination by Commerce recalculating Çolakoğlu's dumping margin from the investigation to zero – thus finding that Çolakoğlu's exports during the POI were fairly traded.  *Id.*  Erdemir argued that Çolakoğlu's fairly traded export volume should be excluded *ab initio* from subject imports for purposes of the negligibility analysis of the investigation, and the

Commission should find that remaining subject imports were negligible. *Id.* With the revised negligibility finding, Erdemir argued that the Commission should terminate or revoke the order on hot-rolled steel from Turkiye. *Id.*

Although the Commission's regulations require that "{u}pon receipt of" a CCR request, the Commission shall publish notice of receipt of a request for review and invitation to comment on whether to initiate a CCR, 19 C.F.R. § 207.45(b), the Commission did not take any action in response to this letter.

Erdemir reiterated its request via follow-up letters on July 22, 2020, and September 10, 2021. P.R.2, P.R.18. The Commission again failed to take any action. The Commission did not take any action in response to this follow-up-letter request either.

It wasn't until December 2, 2021, more than 18 months after Erdemir's May 18, 2020, first request for CCR, that the Commission finally published a request for comments on initiating a CCR. P.R.105, *Hot-Rolled Steel Flat Products From Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination*, 86 Fed. Reg. 68,512 (Int'l Trade Comm'n Dec. 2, 2021) ("*CCR Comments Request*"). The Commission granted interested parties 30 days to file comments in response. *Id.*, 86 Fed. Reg. at 68,513. Several parties submitted comments on December 31, 2021, and January 4, 2022. *See* P.R.108, P.R.109, P.R.110. The Commission's regulations require a decision on initiating a CCR within 45 days after the close of the comment period; thus, the Commission's decision was due no later than February 18, 2022. *See* 19 C.F.R. § 207.45(c).

On January 20, 2022, instead of acting on the CCR request and comments filed by interested parties, the Commission published notice of its decision to conduct a full sunset review of the orders on hot-rolled steel from Turkiye and seven other countries. P.R.116, *Notice*

*of Commission Determination To Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat*

*Products From Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United*

*Kingdom*, 87 Fed. Reg. 3123 (Int'l Trade Comm'n Jan. 20, 2022) ("*Full Sunset Initiation*").

February 18, 2022 – the regulatory deadline for publishing the decision whether to

initiate the CCR – passed without any action by the Commission.

On November 23, 2022, nearly a full year after inviting parties to submit comments on

Erdemir's request for CCR, and more than 2 ½ years after Erdemir first requested a CCR, the

Commission issued its denial of the request for CCR, publishing its decision a week later.

P.R.356, *Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section*

*751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration*

*Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–*

*TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73,331 (Int'l Trade

Comm'n Nov. 29, 2022) ("*CCR Denial*").

In denying the CCR request, the Commission explained that it was denying the request

because (1) "{a}t the time Erdemir filed its request for a changed circumstance review, the

Commission was already conducting a {sunset review}" of the order (*citing Eveready Battery*

*Co., Inc. v. United States*, 23 CIT 896, 77 F. Supp. 2d 1327 (1999)); (2) negligibility is not a

factor for the Commission to consider under the statute in a changed circumstances review; and

(3) a CCR "involves a forward-looking inquiry that considers whether in view of changed

circumstances an order is no longer needed to prevent the continuation or recurrence of material

injury," and "does not provide an opportunity for the Commission to reconsider and amend its

original injury determination" (*comparing* 19 U.S.C. § 1675a(a) *with* 19 U.S.C. §§ 1673d(b)(1)

& 1677(24)).  P.R.356, *CCR Denial*, 87 Fed. Reg. at 73,332.

Two days after denying the CCR request, on November 25, 2022, the Commission issued the final results of the sunset review, acknowledging that Erdemir had raised arguments in the sunset review, the request for CCR, and the request for reconsideration that the Commission could reconsider the original investigation negligibility decision in the sunset review.  P.R.355, *Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, USITC Pub.5380, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), at 48 & n.298 ("*Sunset Publication*").  But the Commission declined to address the arguments in the sunset review, explaining that the Erdemir also raised the arguments in "proceedings outside of these {sunset} reviews and the Commission has addressed them there" (where the Commission declined to initiate proceedings to address Erdemir's arguments).   P.R.357, *Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (Int'l Trade Comm'n Dec. 2, 2022) ("*Sunset Final*"), and P.R.355, *Sunset Publication*, USITC Pub.5380 at 26 and n.132, I-7 & n.30.

Upon receiving notice of the Commission's sunset review decision, Commerce continued the AD order on hot-rolled steel from Turkiye.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom: Continuation of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and United Kingdom) and Countervailing Duty Order (Korea) and Revocation of Antidumping and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't Commerce Dec. 22, 2022) ("*Continuation Order*").

Erdemir timely appealed the Commission's denial of Erdemir's request for CCR by filing a summons and complaint on December 26, 2022.  ECF 4, Complaint.  Erdemir explained its claim as follows:

> The Commission has the authority to conduct a changed circumstances review for purposes of retroactive correction of errors in the AD negligibility determination in the original investigation, and wrongly wrongfully declined to conduct a CCR to reconsider the negligibility decision of its original investigation in light of the retroactive exclusion of Çolakoğlu from the AD order.

*Id.* at ¶37.  The Commission filed its motion to dismiss on May 18, 2023, three years to the day after Erdemir first filed a request for review.  ECF 38, ITC Mot. to Dismiss.

## II.     Legal Background

*Changed Circumstances Review*.  The Commission is required to conduct a CCR whenever it receives a request for CCR that "shows changed circumstances sufficient to warrant a review."  19 U.S.C § 1675(b)(1).  The burden is on "the party seeking revocation of an order {to show} whether there are changed circumstances sufficient to warrant such revocation."  19 U.S.C § 1675(b)(3)(A).  Generally speaking, however, the Commission "may not review" an order, "less than 24 months after the date of publication of the notice of" its determination.  19 U.S.C § 1675(b)(4).

The Commission's regulations require that, "{u}pon receipt of a properly filed and sufficient request for a review," the Commission "shall publish notice of having received {a CCR} request…inviting public comment on the question of whether the Commission should institute a {CCR}."  19 C.F.R. § 207.45(b).  Parties "shall have at least thirty (30) days…to submit comments to the Commission."  *Id.*  And the Commission must determine whether to initiate a CCR "{w}ithin forty-five (45) days after the close of the period for public comments."  19 C.F.R. § 207.45(c).

In a CCR, similarly to a sunset review, the Commission is required to "determine whether revocation of the order…is likely to lead to continuation or recurrence of material injury." 19 U.S.C § 1675(b)(2)(A). And in a CCR following "recalculations by Commerce of the dumping margin in the original investigation," may reconsider the Commission's injury determination from the original investigation. *SAA,* H.R. Doc. No. 103-316, vol.1, at 851 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184. After the Commission reaches its decision in a CCR, Commerce "may revoke…an antidumping duty order. 19 U.S.C § 1675(d)(1). The effective date of revocation of the order applies "on or after the date determined by" Commerce. 19 U.S.C § 1675(d)(3).

*Statutory Construction*. This Court addresses issues of statutory construction guided by the two-step analysis set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The first step is "whether Congress has directly spoken to the precise question at issue." *Id*. 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If "Congress has not directly addressed the precise question at issue," then "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

This Court looks first to "what Congress has enacted beginning with the language of the statute itself, giving effect – if at all possible – to every clause and word of the statute (*citing Duncan v. Walker*, 533 U.S. 167, 172, 174, 150 L. Ed. 2d 251, 121 S. Ct. 2120 (2001)). Further, "as a general canon of statutory interpretation, the language of a statute is to be construed to avoid treating terms as surplusage." *See Mid Continent Nail Corp. v. United States*, 37 CIT 1313, 1346 n.27, 949 F. Supp. 2d 1247, 1276 (2013) (*citing Board of Trustees of the Leland*

*Stanford Junior University v. Roche Molecular Systems, Inc*., 563 U.S. 776, 788, 131 S. Ct. 2188, 2196, 180 L. Ed. 2d 1 (2011); 2A N. Singer & J. Singer, Sᴜᴛʜᴇʀʟᴀɴᴅ Sᴛᴀᴛᴜᴛᴏʀʏ Cᴏɴsᴛʀᴜᴄᴛɪᴏɴ § 46.7, at 265-66 (7th ed. 2007).").  Indeed, "all provisions should be given effect and none should be given an interpretation to have no consequence."  *Amcor Flexibles Singen GmbH v. United States*, 425 F. Supp. 3d 1287, 1299 (Ct. Int'l Trade 2020) (*quoting Nielsen v. Preap*, 139 S. Ct. 954, 955, 203 L. Ed. 2d 333 (2019)).

Regarding the interpretation of the CCR statutory provisions, the United States set forth its interpretation of the CCR statutory provisions (and of most statutory provisions in the trade law) in the *SAA*.  "Congress approve{d}…the statement of administrative action proposed to implement the agreements that was submitted to the Congress on September 27, 1994," 19 U.S.C § 3511(a)(2), and adopted the *SAA* as the authoritative expression by the United States "in any judicial proceeding in which a question arises concerning such interpretation":

> The statement of administrative action approved by the Congress under section 3511(a) of this title shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application.

*See* 19 U.S.C § 3512(d).  The *SAA* carries "authoritative weight."  *AK Steel Corp. v. United States*, 226 F.3d 1361, 1368 (Fed. Cir. 2000).

Generally, when dumping margins change, Congress, through the SAA, "precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margins," which "could occur due to … judicial remand."  *SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184.  As an exception, however, the *SAA* specifically approves the Commission's reconsideration of its determination in a CCR "on the basis of recalculations by Commerce of the dumping margin in the original investigation."  *Id.*

For {non-staggered} investigations for which cumulation is appropriate, the Commission is to use the most recent dumping margin issued by Commerce at the time the Commission closes its record.  This precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margins.

*Changes in the original margin could occur due to* further proceedings in staggered investigation, corrections of ministerial errors, reconsiderations of a determination, or *judicial remand.* Absent this provision, Commission determinations could be subject to repeated request for reconsideration or judicial remands. The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin.  *The Commission, however, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation if the party seeking such review establishes that it is warranted.*  Changes in dumping margins in administrative reviews should not form the basis for a changed circumstances review.

*SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184 (emphasis added).

## STANDARD OF REVIEW

The Commission argues that Erdemir's complaint should be dismissed on the claim that Erdemir's CCR request was mooted when the Commission decided to initiate a full sunset review.  *Comm'n Mot.* at 12-17.  "A case becomes moot when it has 'lost its character as a present, live controversy of the kind that must exist if {the Court is} to avoid advisory opinions on abstract propositions of law.'" *Clearon Corp. v. United States*, 34 CIT 970, 973, 717 F. Supp. 2d 1366, 1368 (2005) (*quoting Hall v. Beals*, 396 U.S. 45, 48, 90 S. Ct. 200, 24 L. Ed. 2d 214 (1969) (citations omitted)).

The Commission further argues that the complaint should be dismissed for failure to state a claim upon which relief may be granted.  To survive a motion to dismiss on these grounds, the "factual allegations must be 'enough to raise a right to relief above a speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  When

evaluating a motion to dismiss for failure to state a claim upon which relief may be granted, "the

court accepts as true the facts alleged in the plaintiff's pleading and construes all inferences in the

plaintiff's favor."  *Int'l Custom Prods. v. United States*, 32 CIT 302, 305, 549 F. Supp. 2d 1384,

1389 (2008) (*citing United States v. Ford Motor Co*., 497 F.3d 1331, 1336 (Fed. Cir. 2007);

*Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); *Ashcroft v. Iqbal*, 556 U.S.

662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "The standard of review at the motion to

dismiss stage is forgiving. 'The question to be decided is not whether the plaintiff will prevail in

its claim but whether it is entitled to offer evidence in support of its claim, since federal policy

favors disposition on the proof rather than on the pleadings.'" *Id.* 32 CIT at 315, 549 F. Supp. 2d

at 1397 (*quoting Halperin Shipping Co., Inc. v. United States*, 13 CIT 465, 466 (1989); *accord*

*Hoed v. U.S. Sec'y of Agric*., 32 CIT 63, 64, 533 F. Supp. 2d 1354, 1355 (2008).

## SUMMARY OF THE ARGUMENT

The Commission argues that Erdemir does not have a viable claim, basing its claim on

this Court's 1999 decision *Eveready Battery Co., Ltd. v. United States*.  But the Commission

ignores the *SAA* – approved by Congress and recognized as the authoritative interpretation of the

statute under 19 U.S.C §§ 3511(a)(2) and 3512(d) – which specifically provides for the precise

CCR that Erdemir sought, but that the Commission denied.  Erdemir sought a changed

circumstances review of the Commission's original injury determination after the Commerce

recalculated on judicial remand the antidumping duty margins of the two mandatory respondents

from the original investigation.  One of the Turkish two companies originally under investigation

was found on appeal not to have been dumping.  As not dumped, that company's imports would

not have excluded from subject merchandise for purposes of the negligibility determination, as

when it was when that same Turkish company was also found not subsidized, and Turkish subject imports would have been found negligible.

The SAA addresses this situation. After setting forth a general rule precluding "challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin," the SAA states: "The Commission, however, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation if the party seeking such review establishes that it is warranted." The Commission has not addressed this sentence of the SAA, and – ignoring it again in its motion to dismiss – argues that Erdemir's SAA-approved CCR request was not authorized under the statute, and thus that this appeal should be dismissed for failing to state a claim upon which relief may be granted. This Court, however, cannot ignore the SAA's mandate specifically allowing the CCR Erdemir sought. Thus, Erdemir raises a claim for which the Court can grant relief through remand.

The Commission also argues that Erdemir's CCR request was mooted by the sunset review, asserting that the analysis in the two proceedings is identical. The analysis is not identical. Even so, the Commission was only able to argue mootness because it intentionally delayed responding to Erdemir's CCR request for a total of 2 ½ years. The Commission's delay violated its own regulations, which require that "upon receipt" the Commission publish notice of receipt of a request for CCR and invite comment on whether to initiation of the request. The Commission did not publish notice of Erdemir's CCR request for 18 months – two months before determining to conduct a full sunset review – and did not publish its decision not to initiate the CCR until a year later.

The Commission argues to this Court that Erdemir's appeal should be dismissed because "the issues raised {in the CCR} were rendered moot when the Commission determined to conduct a full five-year ("sunset") review."  But the circumstances giving rise to the Commission's justification came about solely because of the Commission's own delay.  The Court should not permit the Commission to avoid its statutory duties through intentional delay, as this would impermissibly render as surplusage the entire statutory scheme for Commission CCRs.  Even had there been no delay in the Commission's response, the sunset review here still would not have rendered Erdemir's CCR request moot.  Although there may be some instances where a sunset review moots a CCR, the CCR contemplated by the *SAA* to address the effect of recalculations of dumping margins by Commerce in judicial remand on the Commission's injury determination is not one where the sunset review could be duplicative.  Further, the Commission cannot claim, after having refused even to address the CCR issues in the context of the sunset review, that the sunset review it conducted disposed of Erdemir's claim.  Accordingly, Erdemir's action was not mooted.

## ARGUMENT

This Commission's argument, that the sunset review moots Erdemir's CCR request, would improperly render as surplusage the entire statutory provision for Commission CCRs by allowing the Commission intentionally to delay publishing notice of receipt of the request for CCR and its decision whether to initiate a CCR until such a time as it could deny the CCR because of a pending or completed full sunset review.  This Court cannot countenance the Commission's violation of its own regulations to delay addressing a CCR request; otherwise, the Commission could always avoid a CCR – frustrating the statute enacted by Congress – by delaying its response to a CCR request, initiating a full sunset review, and seeking to dismiss any challenge to the denial of a request for CCR.  The Commission is not authorized to circumvent

and otherwise ignore the statutory provisions enacted by Congress.  *See Lincoln v. Vigil*, 508 U.S

182, 193, 113 S. Ct. 2024, 124 L. Ed. 2d 101 (1993) ("an agency is not free simply to disregard

statutory responsibilities").

**I.      The Expected Evaluation Underlying Erdemir's CCR Request Is Specifically
         Approved By The SAA And Supports A Claim Upon Which Relief May Be
         Granted**

Erdemir's CCR request, and its claim before this court, state a claim upon which relief

can be granted because the remedy sought by Erdemir's CCR request is specifically approved by

the SAA.  The authoritative *SAA* specifically anticipated the precise circumstances to be

reviewed in a CCR as Erdemir raises here.  Contrary to the Commission's arguments, Congress

approved looking back at the original injury determination in a CCR when an original

investigation AD rate is recalculated on appeal, when the review is warranted.  The

circumstances described in the *SAA* are the precise circumstances of the underlying Erdemir's

CCR request.

The context of the discussion in the *SAA* establishes that Congress approved an exception

to typical CCRs.  Congress approved a general rule to "preclude challenges to a Commission

determination on the basis that Commerce later modifies the original dumping margin,"

identifying "the most recent dumping margin issued by Commerce at the time the Commission

closes its record" as the margins to consider in the Commission's proceedings.  *SAA*, H.R. Doc.

No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184.  The *SAA* explains that "{c}hanges in the

original margin could occur due to further proceedings in staggered investigations, corrections of

ministerial errors, reconsideration of a determination or judicial remand."  *Id.*.  The *SAA* further

explains that without this general rule, "Commission determinations could be subject to repeated

requests for reconsideration or judicial remands."  *Id.*  Moreover, "{t}he finality of injury

determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin." *Id.*

But the *SAA* approves an exception to this general rule under specific circumstances giving rise to a CCR: when the AD margin of an original investigation is recalculated by Commerce on appeal and may have some effect on the Commission's original injury determination:

> **T**he Commission, however, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation if the party seeking such review establishes that it is warranted.

*SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184.  The language "where warranted," logically identifies only those instances where the recalculation can affect the original injury determination:  where the change in AD rate from recalculation on appeal would change the determination by the Commission.  *See, e.g., Consol. Fibers*, 574 F. Supp. 2d at 1381 ("Amended margins found by Commerce on remand may warrant a remand to the Commission in a related appeal if the amended margins "may be determinative" and have been finalized, *i.e.,* reviewed by this Court or the U.S. Court of Appeals for the Federal Circuit" (*citing Usinor Industeel, S.A. v. United States*, 27 CIT 238, 238-40 (2003) (*citing Borlem*, 913 F.2d at 939)); *Usinor*, 27 CIT at 238-40 (citing *Borlem*, 913 F.2d at 939)).  *Usinor Industeel, S.A. v. United States*, 26 CIT 1402 (2002) (finding that sunset review was based upon incorrect data after an appeal changed the scope of the investigation to exclude and remand for reconsideration of decisions affected by change in data).

While there may be multiple instances where Commerce's recalculation could change the determination by the Commission, one certainly is a recalculated AD margin (or margins) that changes from affirmative to *de minimis* or zero, and thereby removes from subject merchandise

sufficient import volume to reduce subject imports from a country to negligible levels. Such a factual scenario is exceptionally rare but is precisely the circumstance underpinning Erdemir's CCR request. In contrast, it would not be enough to change the outcome of a Commission determination if the AD margin changes merely from one above-*de minimis* margin to another above-*de minimis* margin, because such a change is not determinative. Similarly, if the recalculation of AD margin from above *de minimis* to below *de minimis* does not affect a sufficient volume of imports, such that the import volume from the relevant country remains above negligible, without some other special circumstance, the reduction in subject import volume would have no effect on the Commission's injury determination. In the present case, however, we know exactly the impact of removing the volume of Çolakoğlu's shipments from the universe of subject imports, as this was exactly what led the Commission to a negative injury determination in the co-pending CVD investigation.

The language of the *SAA* specifically contemplates a backward-looking correction. In context, the CCR based upon the specific circumstances described here is an exception to the otherwise general rule "preclud{ing} challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin," and freeing the Commission from being "required to amend or revisit its determination." *SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184. Whereas the general rule precludes most challenges to Commission determinations, and frees the Commission from being required to amend or revisit its determination with every change in margins, the exception provides a mechanism for challenging a prior determination and allowing the Commission to revisit and amend its prior decision. *Id.* This exception fits perfectly the situation here – where the Commission's negligibility and injury decisions regarding Turkiye in the original investigation would have been

*22-350 - Erdemir Response to Mot to Dismiss*

different had Commerce correctly calculated Çolakoğlu's dumping margin as *de minimis* in the first place.

The Commission entirely fails to examine the authoritative interpretation of the statute contained in the *SAA*, and nothing in the Commission's argument undermines the validity of Erdemir's CCR request and action here. *See* ITC Mot. at 19. The Commission cites pre-URAA (pre-*SAA*) case law that cautions that Commission determinations "should not be disturbed lightly." *Id.* (citing cases from 1988, 1987, 1982, 1980, and legislative history from the 1984 amendments to the law). The Commission's arguments are inapposite, however, because they do not address the specific circumstances approved in the *SAA* with the 1994 amendments to the law. Further, the language of the *SAA* shows that Congress agreed that Commission's determinations "should not be disturbed lightly," precluding challenges in all other instances of changed dumping margins, with the sole exception being the circumstances present with Erdemir's CCR request.

Further, although the Commission seems to dispute the propriety of Erdemir's CCR request, implying that Erdemir had to appeal the Commission's original determination to preserve an ability to seek relief now, the underdeveloped nature of this argument is indicative of its quality. ITC Mot. at 16-17, 19. The *SAA* specifically contemplates that this unique issue would be raised in a CCR – not on remand in an appeal of the Commission's original injury determination (where the court would have had to agree to stay proceedings for several years until the AD appeal is final). *SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184. In any event, this Court has previously rejected the procedural mechanism the Commission believes is required to preserve the ability to seek relief. *LG Elecs., Inc. v. United States ITC*, 38 CIT 103 (2014) (denying request to sever negligibility claim against the ITC until another judge

could decide whether substantive claims in appeals of companion AD and CVD cases would render margins *de minimis* and, consequently, import volume negligible).

Moreover, the language of the *SAA* places the timing of the CCR after Commerce has recalculated the dumping margins during a judicial remand. *Id.* That is, the CCR Congress approved in the *SAA* is both independent of a separate judicial appeal of Commerce's original AD investigation and is expected to be requested and initiated after the separate judicial action results in "recalculations by Commerce of the dumping margin in the original investigation." *Id.*

The Commission also asserts that any change giving rise to a CCR must relate to the period after an AD order is imposed, but the *SAA* clearly states otherwise. *See* ITC Mot. at 18. The *SAA* provides a clear path in a CCR for the Commission to reconsider the injury determination in an original investigation when the results of subsequent judicial appeals of the AD investigation entirely undermine the Commission's decision *ab initio*, as Çolakoğlu's appeal of the AD order entirely undermines the Commission's negligibility and material injury decisions as to Turkiye. *SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184.

Finally, while the Commission relies on this Court's decision in *Eveready Battery* to claim that the Commission is "unable to provide any retroactive relief in a changed circumstances review," *Eveready Battery* is inapposite, as described below, because it relates to post-order changes in consumption patterns, and does not relate to the specific CCR identified in the *SAA* as an exception allowing the Commission to revisit and amend its injury determination from the original investigation. *See, infra,* Section II; *compare Eveready Battery*, 23 CIT at 896-97, 77 F. Supp. 2d at 1328, *with SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184.

The Federal Circuit's holding in *Tokyo Kikai* does not change this analysis.  There, the court addressed fraud by respondent producers of large newspaper printing presses, that intentionally withheld information about secret rebates to customers to lower their antidumping duty margins and terminate the antidumping duty order.  *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1355-57 (Fed. Cir. 2008).  When this fraud was discovered and confirmed in federal district court proceedings, Commerce self-initiated a changed circumstances review under 19 U.S.C. § 1675(b)(1).  *Id.* at 1357-58; *Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan: Initiation of Changed Circumstances Review*, 70 Fed. Reg. 24,514, 24,514-24,516 (Dep't of Commerce May 10, 2005). ("*LNPP CCR*").  In *Tokyo Kikai*, the Federal Circuit agreed that reopening the final results of an administrative review was not contemplated by 19 U.S.C. § 1675(b)(1), and instead held that in the context of fraud, Commerce's authority to reconsider prior determinations arose from its inherent authority to protect the integrity of its own proceedings.  *Id.*, at 1360-61.  The court in *Tokyo Kikai* did not address the context of a 19 U.S.C. § 1675(b)(1) changed circumstances review.

Further, the Commission's reliance on *Tokyo Kikai* here contradicts its conclusion in the *CCR Denial* that the context addressed in *Tokyo Kikai* does not match the circumstances here. P.R.356, *CCR Denial*, 87 Fed. Reg. at 73,332 (denying reconsideration because "there is no evidence of fraud or other fact that suggest extraordinary circumstances").  To the extent the Commission argues here that Erdemir should have sought reconsideration under the Commission's inherent authority to reconsider its decisions, it has argued elsewhere that Erdemir was not entitled to a reconsideration of its decision.  *Id.*  An appeal of the Commission's refusal to reconsider its decision is currently also before this Court.  *See Ereğli Demir ve Çelik*

*Fabrikalari T.A.Ş. v. United States International Trade Commission, et al.,* Court No. 22-cv-00349.  The Commission cannot have it both ways.

The Federal Circuit has noted that "the Supreme Court has noted that 'an agency literally has no power to act . . . unless and until Congress confers power upon it.'" *FAG Italia S.p.A. v. United States*, 291 F.3d 806, 816 (Fed. Cir. 2002) (*quoting La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986)).  Congress, by approving the *SAA* and identifying the *SAA* as the authoritative interpretation of relevant statutory provisions here in any judicial proceeding, conferred powers upon the Commission to conduct a CCR for the specific purpose of evaluating the effect on the Commission's original injury determinations of recalculations by Commerce of dumping margins in judicial remands.  *SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184; 19 U.S.C §§ 3511(a)(2) and 3512(d).   Congress specifically approved the precise CCR sought by Erdemir here.  The Commission cannot discard what Congress has authorized.  *Lincoln*, 508 U.S at 193 ("an agency is not free simply to disregard statutory responsibilities").  The Commission's refusal to conduct the CCR on the claim that is not authorized thus gives rise to a viable claim upon which this Court may grant relief.

## II.    Erdemir's Claim Was Not Rendered Moot By The Commission's Determination To Conduct A Full Sunset Review

The Commission's initiation of a full sunset review did not render Erdemir's CCR request moot because, as described above, Congress specifically approved CCRs to address the precise issue Erdemir raised, and further, because the case the Commission relies upon is inapposite in view of the substance of the review request.  *Eveready Battery*, 23 CIT 896, 898-904, 77 F. Supp. 2d 1327, 1328- 1334 (1999) (comparing 19 U.S.C. § 1675(b)(2)(A) with 19 U.S.C. § 1675(c)(1)).  Further, this Court should reject the Commission's attempt to legitimize

its violation of its own procedural regulations by its substantial, intentional delays to avoid

CCRs.  Approving the Commission's actions would eliminate, as a practical matter, any

Commission requirement to conduct a CCR, rendering as surplusage the entire statutory

provision for Commission CCRs.

 The Commission relies almost exclusively on this Court's opinion in *Eveready Battery*,

for its argument that any CCR is rendered moot by initiation of a full sunset review.    ITC Mot.

at 15-16.  *Eveready Battery* is inapposite, however, in view of the different facts of that case, the

statutory framework providing for CCRs, and the specific and authoritative interpretation of the

statute found in the *SAA*.  Indeed, *Eveready Battery* does not present an issue of the nullification

of the key factual underpinning of the Commission's original injury determination, the

Commission's violation of its own regulations, or a scenario specifically approved by Congress

for addressing the invalidated underpinnings of an injury determination.

 In *Eveready Battery*, Eveready requested a CCR nine years after Commerce published

the AD order on electrolytic manganese dioxide from Greece and Japan.  *Eveready Battery*, 23

CIT at 896-97, 77 F. Supp. 2d at 1328.  Eveready argued that there had been "structural changes

in battery consumption," since entry of the order, and as a result, imports from Greece "would be

'limited to such a small quantity that it could have no material impact on EMD producers in the

United States.'"  *Id.*  The Commission published notice of the CCR request one week after

receiving the request, and invited comment on whether to initiate the CCR.  *Id.*, 23 CIT at 897,

77 F. Supp. 2d at 1328 (*citing Electrolytic Manganese Dioxide from Greece and Japan*, 63 Fed.

Reg. 30,254, 30,255 (Int'l Trade Comm'n June 3, 1998) (request for comments regarding

institution of section 751(b) review)).  Two months later, the Commission rejected Eveready's

CCR request, and Eveready appealed.  *Id.* (*citing Electrolytic Manganese Dioxide from Greece*

*and Japan*, *Dismissal of Request for Institution of a Section 751(b) Review Investigation*, 63 Fed. Reg. 43,192 (Int'l Trade Comm'n Aug. 12, 1998).  About one year after Eveready's filed its CCR request, the Commission initiated a sunset review of the AD order and filed a motion to dismiss Eveready's CCR appeal on the basis that initiating the sunset review rendered Eveready's CCR request moot.  *Id.*  The Court in *Eveready Battery* dismissed the Commission's motion without prejudice, allowing the Commission to refile its motion if a full review was initiated.  *Id.* After the Commission initiated a full review and refiled its motion to dismiss, the Court explained that "{i}f the Commission's institution of a full sunset review accords Eveready all of the relief it sought by suing for the institution of a changed circumstances review, the current action will be rendered moot."  *Id.*, 23 CIT at 897, 77 F. Supp. 2d at 1329.  The Court in *Eveready* found that, under the specific facts of that case, the requested CCR and a sunset review would provide the same relief:  "The court finds that *in this case* the sunset review of the antidumping order will provide the same relief as a changed circumstances review."  *Id.*, 23 CIT at 904, 77 F. Supp. 2d at 1334 (emphasis added).

The substantive CCR request in *Eveready Battery is* significantly different from Erdemir's CCR request, making *Eveready Battery* inapposite. *Compare Eveready Battery*, 23 CIT at 896-97, 77 F. Supp. 2d at 1328, *with* P.R.105, *CCR Comments Request,* 86 Fed. Reg. at 68,512 (Dec. 2, 2021), *and* P.R.356, *CCR Denial*, 87 Fed. Reg. 73,331 (Nov. 29, 2022).  In *Eveready Battery*, Eveready sought a CCR to address changes in the market nine years after the order went into effect, whereas Erdemir sought a CCR when Commerce's dumping margin recalculation on judicial remand effectively reduced subject imports during the time period evaluated in the original injury investigation to negligible levels, thereby invalidating, *ad initio*, the factual underpinning of the Commission's affirmative injury determination.  *Compare*

*Eveready Battery*, 23 CIT at 896-97, 77 F. Supp. 2d at 1328, *and AD Orders*, 81 Fed. Reg. at

67,962 (Oct. 3, 2016), *with*, P.R.1, Erdemir ITC Request for Reconsideration (May 18, 2020).

Further, Erdemir's CCR request fits in a unique category of CCR requests specifically

contemplated by the *SAA* to revisit a prior Commission determination. *SAA*, H.R. Doc. No. 103-

316 at 851, 1994 U.S.C.C.A.N. at 4184.

A further distinction is that in *Eveready Battery*, the Commission promptly published

notice of Eveready's May 26, 1998 CCR request and invited comments on whether to initiate the

CCR, reaching its August 12, 1998 decision not to initiate the CCR in less than three months.

*Eveready Battery,* 23 CIT at 897, 77 F. Supp. 2d at 1328 (*citing Electrolytic Manganese Dioxide*

*from Greece and Japan*, *Dismissal of Request for Institution of a Section 751(b) Review*

*Investigation*, 63 Fed. Reg. 43,192. With Erdemir, however, the Commission violated its own

regulation requiring "prompt{}" action. 19 C.F.R. § 207.45(b). Erdemir filed its initial CCR

request on May 18, 2020, but the Commission did not publish notice of Erdemir's CCR request

until December 3, 2021. *Compare* P.R.1, *Erdemir Request*; *with* P.R.105, *CCR Request for*

*Cmts*.

The Commission again violated its own regulation by delaying its decision on whether to

initiate the CCR. The Commission published notice of Erdemir's CCR request on December 3,

2021, where it set a 30-day deadline, to January 3, 2022, for filing comments. P.R.105, *CCR*

*Request for Cmts*. Under its regulations, the Commission had 45 days, to February 18, 2022, to

decide whether to initiate the CCR. *See* 19 C.F.R. § 207.45(c). The Commission delayed until

almost a full year later (and two-and-a-half years after Erdemir's May 18, 2020 request for CCR)

to decline to initiate a CCR on November 29, 2022. *See* P.R.356, *CCR Denial*, 87 Fed. Reg.

73,331.

*22-350 - Erdemir Response to Mot to Dismiss*

The Commission's delay in addressing a CCR request, along with the realities of the time it takes to appeal a Commerce AD margin calculations, means that – under the Commission's preferred interpretation – no party could ever successfully seek a CCR.  *See also* 19 U.S.C § 1675(b)(4) (prohibiting CCRs within 24 months of the injury determination in the original investigation).  Çolakoğlu's appeal took three-and-a-half years, with the Commission adding another two-and-a-half-year delay before deciding whether to initiate a CCR.  In the Commission's view, because a sunset review evaluates the same factors, a CCR is always rendered moot by a full sunset review.  ITC Mot. at 9-15.  Thus, with delays, the Commission could always block a CCR by simply initiating a full sunset review.  Accepting the Commission's interpretation would also render the statute superfluous, an interpretation not favored under the cannons of statutory construction.  *See Mid Continent*, 37 CIT at 1346 n.27, 949 F. Supp. 2d at 1276 n.27 (*citing Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys*., 563 U.S. 776, 788, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011)).

The substantive issue in *Eveready Battery* is also very different from the issue raised by Erdemir.  There, Eveready, an importer of batteries from Greece, "alleged that there had been structural changes in battery consumption and argued that the revocation of the existing antidumping duty order for Greece would be 'limited to such a small quantity that it could have no material impact on EMD producers in the United States.'"  *Id.*, 23 CIT at 897, 77 F. Supp. 2d at 1328.  That issue looked at changes to the market after the order went into effect and looked forward to the effect of those changes – the same evaluation as a sunset review.  Here, Erdemir sought the CCR contemplated in the *SAA* that looks back at the Commission's determination in the original investigation in light of dumping margins recalculated (and reduced to *de minimis* or

zero) by Commerce on judicial remand. *SAA*, H.R. Doc. No. 103-316 at 851, 1994 U.S.C.C.A.N. at 4184.

The procedural posture of *Eveready Battery* is also different from the posture here as it affects cumulation. The Commission may only cumulatively assess the effects of subject imports from multiple subject countries in a CCR if the Commission initiates a CCR of all those subject countries on the same day. 19 U.S.C. § 1675a(a)(7). In *Eveready Battery*, Eveready alleged a change in consumption patterns in the market affecting only Greece, but the Commission sought comments on whether it should self-initiate a CCR of Japan also: "Because some of the alleged changed circumstances predominantly relate to the domestic industry and are not limited to imports from Greece, submissions should also address the possibility of the Commission self-initiating a review of the outstanding order on Japan." *See Electrolytic Manganese Dioxide From Greece and Japan*, 63 Fed. Reg. at 30,255; *Eveready Battery*, 23 CIT at 897-901, 77 F. Supp. 2d at 1328, 1331-32. Erdemir's CCR request is limited solely to the effect of Commerce's recalculation of Çolakoğlu's dumping margin on judicial remand on the Commission's injury determination in the original investigation, as contemplated by the *SAA*. *See* P.R.1, P.R.2, P.R.18. While it made sense to consider initiating a CCR of all subject countries in the proceedings underlying *Eveready Battery*, initiating a CCR of all subject countries to address Erdemir's CCR request does not make sense.

Further, the Commission's views in the sunset review here contradict the Commission's claims that "the Commission did not ignore any of the arguments raised by Erdemir in support of its request for a changed circumstances review," and that "the Commission has already, in the sunset review, conducted the identical legal analysis that the statute provides for when

conducting a changed circumstances review." ITC Mot. at 16. In contrast to these conclusory

assertions, the Commission explicitly did not address issues raised by Erdemir's CCR request:

> We note that in asserting that subject imports from Turkey would
> likely have no discernible adverse impact in the event of
> revocation, Erdemir has raised several arguments concerning the
> Commission's negligibility determination in the original
> antidumping duty investigation with respect to subject imports
> from Turkey. It contends that the Commission should revisit that
> determination either in these reviews, in a changed circumstance
> review, or in a reconsideration proceeding. *Erdemir's Prehearing
> Brief* at 10-18; *Erdemir's Posthearing Brief* at 1-6. These
> arguments have also been raised in proceedings outside of these
> reviews and the Commission has addressed them there. Five-year
> reviews are prospective in nature and therefore do not
> accommodate reconsideration of an original determination. *See
> generally* 19 U.S.C. § 1675(c)(1)(C).

R.355, *Sunset Publication*, USITC Pub.5380 at 48 n.298. Thus, although the Commission claims

the sunset review was duplicative and mooted Erdemir's CCR request, the Commission's

decision in the sunset review makes clear that the sunset review was not duplicative because

Erdemir did not receive full consideration of the issues it raised in its CCR request. The

Commission's refusal to address the effects of Çolakoğlu's exclusion from the AD order (and

errors in the sunset review analysis), is currently also before this Court. *See Ereğli Demir ve

Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission, et al.,* Court No. 22-

cv-00351. The Commission cannot have it both ways.

## CONCLUSION

In sum, a sunset review is not duplicative of every CCR proceeding, and *Eveready

Battery* did not hold otherwise. The Court in *Eveready Battery* specifically limited its holding to

the facts of that case, "The court finds that *in this case* the sunset review of the antidumping

order will provide the same relief as a changed circumstances review." *Id.*, 23 CIT at 904, 77 F.

Supp. 2d at 1334 (emphasis added). The unique CCR Erdemir seeks is approved by Congress,

and nothing the Commission has raised addresses, much less undermines, the validity of that

CCR.  Further, the Commission's claim that the sunset review moots Erdemir's CCR request

ignores *Eveready Battery*'s limitation to the specific facts of that case and the significant

substantive and procedural differences between Erdemir's CCR request and the circumstances of

*Eveready Battery*.  Finally, the Commission itself conceded in the sunset review that it would not

address in the sunset review some of the issues raised in Erdemir's CCR request, undermining

the Commission's claim that the sunset review provided all the relief Erdemir could seek.  Thus,

Erdemir has raised a valid claim upon which this Court may grant relief, and Erdemir's CCR

request was not mooted by the Commission's decision to conduct a full sunset review.

Accordingly, this Court should reject the Commission's motion to dismiss.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ *Mark B. Lehnardt*

David L. Simon
Mark B. Lehnardt

Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036

Email: MarkLehnardt@DLSimon.com

</div>

July 28, 2023

<div style="margin-left: 40%;">

*Counsel to Ereğli Demir ve Çelik*
*Fabrikalari T.A.Ş.*

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The confidential version of this brief contains **9,159** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

<u>/s/ Mark B. Lehnardt</u>
Mark B. Lehnardt

Date: July 28, 2023

*Counsel to Ereğli Demir ve Çelik*
*Fabrikalari T.A.Ş.*