## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş., <br><br> **Plaintiff,** <br><br> v. <br><br> UNITED STATES INTERNATIONAL TRADE COMMISSION, <br><br> **Defendant,** <br><br> **and** <br><br> UNITED STATES STEEL CORPORATION, et al., <br><br> **Defendant-Intervenors.** | **Court No. 22-00350** |

## <u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>

**RAVI D. SOOPRAMANIEN**
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3002
Facsimile: (202) 205-3111
ravi.soopramanien@usitc.gov

**MICHAEL K. HALDENSTEIN**
Attorney-Advisor
Telephone: (202) 205-3041
michael.haldenstein@usitc.gov

**DOMINIC L. BIANCHI**
General Counsel
U.S. International Trade Commission

**ANDREA C. CASSON**
Assistant General Counsel for Litigation
Office of the General Counsel
Telephone: (202) 205-3105

*Attorneys for Defendant U.S. International Trade Commission*

**DATED:  August 31, 2023**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION .......................................................................................................... 1

II.     REPLY ARGUMENT ................................................................................................... 2

     A.    Factual Corrections ................................................................................. 2

     B.    The Statute Provides Only for Prospective Changed Circumstances Reviews ................................................................................................. 3

          1.    The Statement of Administrative Action ("SAA") Does Not Require the Commission to Conduct a CCR in the Circumstances Here ................................................................. 5

          2.    The Statute Does Not Provide for Retroactive Changes to Original Determinations in Changed Circumstances Reviews ................................................................................... 7

     C.    Erdemir Has Failed to Rebut the Commission's Demonstration that the Complaint Should Be Dismissed as Moot ....................................... 10

     D.    A Remand Would Not Grant Erdemir the Relief It Seeks, and Would Waste the Resources of the Court and the Parties ..................................... 15

III.    CONCLUSION ........................................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Borlem S.A. Empreedimentos Industriais* v. *United States*,
    913 F.2d 933 (Fed. Cir. 1990)...................................................................14

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)...........................................................................5

*Consol. Fibers, Inc. v. United States*,
    32 CIT 855, 574 F. Supp. 2d 1371 (2008) ......................................11

*Eveready Battery Co., Inc. v. United States*,
    23 CIT 896, 77 F. Supp. 2d 1327 (1999) ...........................1, 10, 11, 12

*LG Elecs., Inc.* v. *U.S. Int'l Trade Comm'n*,
    2014 WL 260603 (Ct. Int'l Trade Jan. 23, 2014). ...........................14

*USINOR Industeel, S.A. v. United States*,
    27 CIT 238 (2003) ............................................................................11

**Statutes**

19 U.S.C. § 1673d(b)(1) ......................................................................14

19 U.S.C. § 1675(b) ......................................................................2, 10

19 U.S.C. § 1675(b)(1) ..........................................................................2

19 U.S.C. § 1675(b)(1)(A) ...................................................................15

19 U.S.C. § 1675(b)(2) ..........................................................................9

19 U.S.C. § 1675(b)(2)(A) ............................................................1, 4, 7

19 U.S.C. § 1675(b)(3)(A) ...................................................................12

19 U.S.C. § 1675(c) ........................................................................3, 10

19 U.S.C. § 1675(d)(1) ..........................................................................8

19 U.S.C. § 1675(d)(3) ..........................................................................8

19 U.S.C. § 1675a(a) ......................................................................8, 14

19 U.S.C. § 1675a(a)(1) .......................................................................15

19 U.S.C. § 1675a(a)(7) .......................................................................12

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Statutes (cont'd)**                                                                    **Page(s)**

19 U.S.C. § 1677(24) ................................................................................................14

19 U.S.C. § 1677(35)(C)(ii) .......................................................................................5

28 U.S.C. § 1581(i) ...................................................................................................3

**Federal Regulations**

19 C.F.R. § 207.45 .....................................................................................................3

19 C.F.R. § 207.45(a) .................................................................................................2

19 C.F.R. § 207.45(b) .................................................................................................3

**Legislative History**

H.R. Doc. No. 103-316, vol.1 (1994) ................................................. *passim*

**USITC Administrative Decisions**

*Ceiling Fans from the People's Republic of China:  Request for Comments*
*   Concerning the Institution of a Section 751(b) Review Investigation*,
    59 Fed. Reg. 30,036 (June 10, 1994) ...........................................................9

**USCIT Rules**

Rule 12(b)(1) ...........................................................................................................16

Rule 12(b)(6) ...........................................................................................................16

## I.      INTRODUCTION

In the Commission's Motion to Dismiss (ECF No. 38 (ITC Motion)), the Commission demonstrated that this case is moot because the Commission has already undertaken the exact "likely" injury analysis that it would take in the changed circumstances review ("CCR") sought by Erdemir.  The Commission also demonstrated that the Complaint fails to state a claim upon which relief can be granted because a CCR could never provide the type of retroactive relief upon which the Complaint is grounded.  Erdemir has failed to meaningfully rebut either of these two alternative grounds for dismissal of this case.

Rather, Erdemir in its Opposition (ECF No. 42) seeks to rewrite and recharacterize the facts, misinterpret the statute and legislative history, and introduce a wholly new claim that is nowhere in its actual Complaint.  Most notably, Erdemir does not dispute the thoughtful reasoning of the one case that is squarely on point with the jurisdictional question presented here, *Eveready Battery Co., Inc. v. United States*, 23 CIT 896, 77 F. Supp. 2d 1327 (1999).  Instead, Erdemir attempts to make factual distinctions that are not pertinent to the mootness question, and to suggest a contorted reading of the statute that would allegedly dictate that Erdemir was entitled to some sort of extraordinary, retroactive, CCR different from the one type described in 19 U.S.C. § 1675(b)(2)(A) and discussed in *Eveready*.

In the end, Erdemir's unavailing efforts to distinguish this case from *Eveready* only emphasize that if the rationale of that case is applied here, as we believe it should be, that rationale would dictate dismissal of this case as moot.  Indeed, an examination of the true facts here in the correct legal framework applicable to CCRs demonstrates that this case should be dismissed as moot or for failure to state a claim upon which relief can be granted.

## II.      REPLY ARGUMENT

### A.      Factual Corrections

In its Motion, the Commission set out the accurate facts relevant to the jurisdictional questions we have raised.  *See* ITC Motion at 1-8.  Erdemir, however, has attempted to revise certain pertinent facts.  In particular, Erdemir now attempts to recharacterize its reconsideration requests as proper requests for a CCR.  *See, e.g.*, Opp'n at 6-8, 15, 26.  Yet, in its own Complaint, Erdemir implicitly recognized that any request for a CCR based on the Commerce decision would not have been ripe until the Federal Circuit's final disposition of the appeal on June 4, 2021.  *See* Compl. at ¶ 26  (Dec. 26, 2022) (ECF No. 4)  ("Çolakoğlu's exclusion from the order became final and conclusive as to all parties" in June 2021).  *See also* Erdemir's Request for Commission Changed Circumstances Review Pursuant to 19 U.S.C. § 1675(b) (Sept. 10, 2021) (PR 18) (Exhibit F to the ITC Motion).  Indeed, in its Complaint, Erdemir properly characterized its May 2020 and July 2020 requests as "ask{ing} the Commission to *reconsider* its injury finding as to Turkey."  *See* Compl. at ¶¶ 21, 23 (emphasis added).[1]

In replying to the ITC Motion, however, Erdemir mistakenly gives the impression that it filed a proper request for a CCR starting in May 2020.  Opp'n at 6-8, 15, 26.  As an initial matter, any requests filed prior to the Federal Circuit's dismissal of appeal on June 4, 2021, were premature.  Not only was the Commerce remand not yet final at the time Erdemir submitted the 2020 reconsideration letters to the Commission, but the May and July 2020 letters (Exhibits C and D to the ITC Motion; PR 1 and PR 2) did not come close to laying out circumstances "sufficient to warrant the institution of a review investigation by the Commission."  *See* 19 C.F.R. § 207.45(a); *see also* 19 U.S.C. § 1675(b)(1).  Now, in order to substantiate its *post hoc*

---

[1] Erdemir incorrectly avers in its Complaint that it filed both letters in 2021.  Compl. ¶¶ 21, 23.

argument (rebutted below) that the Commission somehow acted inconsistently with its regulation, Erdemir seeks to re-label its May 2020 letter, sent more than a year before the Federal Circuit's final action (on June 4, 2021) in the Commerce case, as an "initial CCR request." Opp'n at 26.  Notably, in relying on the Commission's regulation, Erdemir ignores that the Commission response contemplated by the regulation is only triggered "{u}pon the receipt of a *properly filed and sufficient* request for a review investigation."  19 C.F.R. § 207.45(b) (emphasis added).  Neither the May nor July 2020 letter met this threshold.

On September 10, 2021, Erdemir filed a CCR request that attempted to comply with Commission Rule 207.45.  By that time, as directed by the statute, 19 U.S.C. § 1675(c), the Commission had instituted a five-year review of the orders.  *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (Sept. 1, 2021) (PR 5) (Exhibit E to ITC Motion).  This factual scenario does not support Erdemir's suggestion that Congress wanted the Commission to conduct, or even consider whether to conduct, premature CCRs in order to assure that parties could have a CCR before a five-year review was initiated.  Opp'n at 27.

### B.  The Statute Provides Only for Prospective Changed Circumstances Reviews

At the outset, it is important to distinguish the instant case from the parallel proceeding before this Court in Case No. 22-349, involving Erdemir's challenges under 28 U.S.C. § 1581(i) to the Commission's denial of Erdemir's request to reconsider its original affirmative material injury determination on Hot-Rolled Steel Flat Products from Turkey.  While the two matters are intertwined, Erdermir's appeal concerning its request for a reconsideration proceeding concerns a request for the Commission to conduct a backwards-looking analysis as though Commerce had found *de minimis* dumping margins in its original investigation; this case, on the other hand,

concerning Erdemir's request for a CCR, involves a request for a forward-looking analysis by the Commission, in fact the identical forward-looking analysis that the Commission undertook in conducting its five-year review of the same subject products.[2]  Erdemir's efforts to impose a retroactive review requirement in its CCR case runs contrary to the statute.

Indeed, Erdemir's Complaint does not claim that it ever provided the Commission with reasons to conduct a forward-looking CCR.  Rather, by Erdermir's own admission, the claimed changed circumstance goes to the data that the Commission originally relied upon because, according to Erdemir, "Colakoglu's ADD rate *should always have been* zero but for Commerce's having acted contrary to law in its final LTFV investigation of {hot-rolled steel} from Turkey."  Erdemir's Changed Circumstance Review Request at 7 (PR 18) (emphasis added).

Nor did Erdemir's filing before the Commission or its Complaint in this case make an attempt to show the prospective impact of its alleged changed circumstance and why, because of the changed circumstance, revocation of the antidumping order on imports from Turkey would not lead to continuation or recurrence of material injury to the domestic industry.  Thus, despite the explicit statutory language stating that the relevant inquiry in a CCR is "whether revocation of the order . . .is likely to lead to continuation or recurrence of material injury," 19 U.S.C. § 1675(b)(2)(A), Erdemir's Complaint is not even based on an effort to make that showing.  Instead, in its Complaint, and again in its Opposition, Erdemir relies on claims that are not cognizable, arguing that the Commission should have been required to conduct a supposed "change circumstances" review to retroactively "correct the error" and "reconsider" its negligibility determination from the original investigation.  *See* Compl. at 1, 3; Opp'n at 17-21.

---

[2] The fact that the Commission denied both the reconsideration request as well as the request for CCR does not mean one denial must have been infirm, as Erdemir implies.  Opp'n at 22-23.

The Court need not look beyond *Chevron* step one to see the fallacy of Erdemir's interpretation of the statute. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). As discussed in the ITC Motion and below, the intent of the statute is clear that in conducting any CCR the Commission must prospectively examine "likely" injury. This then is "the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.[3]

1.  *The Statement of Administrative Action ("SAA") Does Not Require the Commission to Conduct a CCR in the Circumstances Here*

Erdemir asserts that the SAA accompanying the Uruguay Round Agreements Act ("URAA")[4] "specifically approves the Commission's reconsideration of its determination in a CCR." Opp'n at 12-13. To support this assertion, Erdemir relies on a selective passage from the SAA. *Id.*, (citing SAA at 851). However, the cited language pertains to a change introduced by Congress to the URAA intended to generally *preclude* challenges to a Commission determination on the basis of a revised original dumping margin. Specifically, the URAA introduced a provision directing the Commission to base its evaluation of the magnitude of the margin of dumping in a final determination on those margins "most recently published by {Commerce} *prior to* the closing of the Commission's administrative record." 19 U.S.C. § 1677(35)(C)(ii) (emphasis added). The SAA explains the reason for this amendment:

> Changes in the original margin could occur due to further proceedings in staggered investigations, corrections of ministerial errors, reconsideration of a determination, or judicial remand. Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands. The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin.

---

[3] *A fortiori*, the Commission's interpretation is eminently reasonable and consistent with statutory intent under *Chevron* step 2. *See Chevron*, 467 U.S. at 843-44.
[4] H.R. Doc. No. 103-316, vol.1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184.

> The Commission, however, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation, *if the party seeking such review establishes that it is warranted*. Changes in dumping margins in administrative reviews should not form the basis for a changed circumstances review.

SAA at 851 (emphasis added).

Thus, absent a specific showing establishing review is uniquely warranted, once a Commission determination is final with all appeals exhausted, the SAA opposes institution of a CCR based on later changes to the margins. Congress so expressed its preference to preserve the finality of injury determinations, including where that change is the result of a judicial remand to Commerce.

Directly contrary to Congress' general disfavor towards relying on changed margins to seek a CCR, Erdemir remarkably claims that its CCR request was "SAA-approved," Opp'n at 3, and that the Commission was "required" to conduct a CCR here. Opp'n at 10. Not only does Erdemir misunderstand the law and the burdens, it also actually obtained the same review it would have had if the Commission had granted its CCR request. In the five-year review of the antidumping duty order on Hot-Rolled Steel from Turkey, Erdemir received the benefit of the revised *de minimis* dumping margin that Colakoglu received on remand. In the five-year review, Colakoglu's exports were not included in the import data for subject imports from Turkey as Colakoglu was no longer subject to the order. *See* Five-Year Review Determination, *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380, at 45 n.276 (Nov. 2022) (Exhibit I to the ITC Motion) (Noting that, on remand, "Commerce found a zero antidumping duty margin for Colakoglu and

6

subsequently excluded Colakoglu from the antidumping duty order.  Therefore, it is no longer a producer of subject merchandise and data for it is not included in the data for subject imports from Turkey during the current review.").  While the Commission ultimately cumulated subject imports and made an affirmative determination in its five-year reviews notwithstanding the exclusion of Colakoglu, the revised original margin and exclusion of Colakoglu was in fact reflected in the Commission's Five-Year Review analysis.  *Id*.

  2. *The Statute Does Not Provide for Retroactive Changes to Original Determinations in Changed Circumstances Reviews*

  Erdemir further contends that "{t}he language of the SAA specifically contemplates a backward-looking correction {as} an exception to the otherwise general rule "preclud{ing} challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin."  Opp'n at 19.  Erdemir cites nothing in the statute or the SAA in support of its argument that a backward-looking correction or change to an original determination is contemplated by the SAA's reference to the availability of a Section 751(b) review in certain circumstances.  In fact, Erdemir's argument is contradicted by section 751(b) on its face, as well as by the SAA's discussion of CCRs.

  The SAA states that:

> Amended section 751(b) also applies a new substantive standard, which is consistent with current Commission practice.  In the case of an antidumping or countervailing duty order or finding or a suspended investigation, the Commission must determine whether revocation of the order or finding, or termination of the suspended investigation, is likely to lead to continuation or recurrence of material injury.

SAA at 878.  The language of the statute itself likewise states that the Commission's CCR of an antidumping order must "determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury{.}" 19 U.S.C. § 1675(b)(2)(A).  The statute also

specifies the factors the Commission is to consider in both five-year and changed circumstances reviews when it determines whether revocation of the order is likely to lead to continuation or recurrence of material injury.  19 U.S.C. § 1675a(a).  The factors focus on the likely effects of the subject imports upon revocation of the order and do not allow for modification of the original determination.  In this way, the statute and the SAA are explicit that the Commission's reviews, whether they be CCRs or five-year reviews, must be forward-looking, focusing on what is likely to occur if the order is revoked.

Further contrary to Erdemir's assertion, the statute on its face indicates that in response to a CCR determination, Commerce may only revoke an order prospectively.  As Erdemir itself cites, the statute states that, after a CCR, "{Commerce} may revoke, in whole or in part, a countervailing duty order or an antidumping duty order  . . .," 19 U.S.C. § 1675(d)(1), and that "a determination under this section to revoke an order . . .shall apply with respect to unliquidated entries of the subject merchandise which are entered, or withdrawn from  warehouse, for consumption on or after the date determined by {Commerce}."  19 U.S.C. § 1675(d)(3).  Thus, neither the statute nor the SAA contemplate a backwards-looking analysis or the revocation of the order *ab initio* in the context of a section 751(b) review as urged by Erdemir.  *See* Opp'n at 19.

Erdemir's reasoning is all the more misplaced given that it would turn the purpose of a CCR on its head, providing a better remedy for what Erdemir itself agrees is, at best, an exception to the general rule that changes in dumping margins should not generally be considered sufficient to warrant a CCR.  Under Erdemir's proposal, the statute would actually go beyond allowing an "exception" and allow a super-exception under which CCRs involving dumping margin changes would be entitled to a wholly different test from the prospective

"likely" standard applicable to all other CCRs.  Notably, Erdemir cites to nothing in the statute—because there is no such provision in the statute—that lays out any such unique test for certain types of CCRs.  Moreover, as Erdemir itself recognizes, the terms of a statute are to be construed to avoid treating terms as surplusage.  Opp'n at 11-12.  Yet, Erdemir's interpretation would do just that; it would render 19 U.S.C. § 1675(b)(2) (discussing the standard for Commission review in a CCR) superfluous in a certain class of cases, and would instead make review in those types of cases exactly the same as a reconsideration of the original investigation.

Consistent with the actual purpose of a CCR, the Commission's Federal Register notice inviting comments on whether to institute a CCR explained that "{t}he purpose of the proposed review is to determine whether revocation of the existing antidumping duty order on imports of hot-rolled steel flat products from Turkey *is likely to lead to* continuation or recurrence of material injury."  86 Fed. Reg. 68,512 (Dec. 2, 2021) (PR 105) (Exhibit G to ITC Motion) (emphasis added).  *See also Ceiling Fans from the People's Republic of China, Request for Comments Concerning the Institution of a Section 751(b) Review Investigation*, 59 Fed. Reg. 30,036 (June 10, 1994) (in response to a CCR request based on revisions by Commerce to its final antidumping duty determination that resulted in the exclusion of a subject producer and reduction of antidumping margins for non-specified firms, the Commission's request for comments explained that "{t}he purpose of the proposed review investigation is to determine whether an industry in the United States would be materially injured, or would be threatened with material injury, or the establishment of an industry in the United States would be materially retarded, by reason of imports of ceiling fans from China if the existing antidumping order on such merchandise were to be modified or revoked.").

**C.      Erdemir Has Failed to Rebut the Commission's Demonstration that the Complaint Should Be Dismissed as Moot**

As set out in the ITC's Motion, this Court has specifically spoken to the mootness issue present here.  ITC Motion at 14-15.  That is, in *Eveready*, the Court explained that, given the identicality of the "likely" injury test applied in a CCR and that applied in a five-year review, a Commission determination in a five-year review moots any reason to conduct a CCR covering the identical imports subject to the same most recent Commerce margins available.  *Eveready*, 23 CIT at 903-04, 77 F. Supp. 2d at 1334.  Erdemir's various efforts to distinguish *Eveready* from the instant matter are unavailing.

First, Erdemir argues that the factual underpinnings of the request for the CCR in *Eveready* (changes in market conditions) and those in this case (Commerce's recalculation of the dumping margin) render *Eveready* inapposite here.  Opp'n at 25-26, 27.  But the rationale in *Eveready* in no way turns on the specific facts that were cited in support of warranting a CCR. Rather, the holding was based on the procedural posture, *i.e.,* that the Commission's initiation of a full five-year review had rendered the CCR moot, because the statute required the Commission to ask the same question in both types of review:  whether revocation of the antidumping or countervailing duty order would be/is likely to lead to continuation or recurrence of material injury.  *See Eveready*, 23 CIT at 903-04, 77 F. Supp. 2d at 1334; *Compare* 19 U.S.C. § 1675(b) *with* § 1675(c).

In order to disavow the procedural equivalence of *Eveready* to this case, Erdemir relies on its mistaken belief that Congress intended to allow the Commission to go back to the original period of investigation and start the investigation anew where a CCR request was based on Commerce's litigation-related change to the dumping margins.  As demonstrated above, however, Erdemir's reading of the statute is incorrect.

10

In an alternative effort to distance the pertinent posture of this case from that of *Eveready*, Erdemir introduces in its Opposition a wholly new claim that is nowhere in its Complaint.  Opp'n at 25-26.  That is, Erdemir now claims, seven months after it filed its Complaint, that the Commission allegedly failed to follow its own Rules by delaying action on Erdemir's CCR request.  In order to support this new and fallacious argument, Erdemir has now recharacterized the facts as set out in its own Complaint, as discussed above.  Specifically, Erdemir has receded from its proper characterizations of the May and July 2020 letters as "reconsideration" requests, and now calls them CCR requests, notwithstanding that any CCR request prior to the June 4, 2021 issuance of the Federal Circuit mandate would have been premature.  *See Consol. Fibers, Inc. v. United States*, 32 CIT 855, 865, 574 F. Supp. 2d 1371, 1382 (2008) ("Should the Court issue a remand in the {related} Commerce appeal, and Commerce determines Ningbo Dafa's dumping margin to be *de minimis*, the appropriate relief is for the Plaintiffs to seek a changed circumstances review once the amended margin becomes final."); *USINOR Industeel, S.A. v. United States*, 27 CIT 238, 238–40 (2003) (amended margins found by Commerce on remand may warrant a remand to the Commission in a related appeal if the amended margins "may be determinative" and have been finalized, *i.e.,* reviewed by this Court or the U.S. Court of Appeals for the Federal Circuit).

In other words, to substantiate its *post hoc* argument that the Commission somehow acted inconsistently with its regulation, Erdemir seeks to re-label its May 2020 letter, sent more than a year before the Federal Circuit's final action in the Commerce case, as an "initial CCR request." Opp'n at 26.  While, as described in the ITC's Motion at 4, Erdemir's 2020 letters alternatively, in passing, requested a CCR, neither these statements nor Erdemir's new argument can transform those letters into timely or proper requests for a CCR.

In actuality, Erdemir's filings in May 2020 and July 2020 were entitled "Request for Reconsideration" and "Letter in Support of Request for Reconsideration."  Neither request for reconsideration filed in 2020 cited the Commission Rule on CCRs or attempted to lay out the criteria necessary to meet Erdemir's burden of persuasion under 19 U.S.C. § 1675(b)(3)(A) for institution of a CCR.  Rather, each contained a single sentence referencing a possible CCR.  *See* Erdemir Letter of May 18, 2020, at 6 (PR 1); Erdemir Letter of July 22, 2020, at 1 (PR 2).

In any event, even if the Commission had deviated from its regulations—which it did not—that would not change the fact that the Commission has already conducted the identical "likely" injury analysis that would apply to a CCR, and therefore this case is moot, just as the request for a CCR in *Eveready* was moot in light of the Commission's full five-year review. *Eveready*, 23 CIT at 903-04, 77 F. Supp. 2d at 1334.

Nor is this case pertinently distinguishable from *Eveready* based on Erdemir's contention that cumulation would not be appropriate in a CCR of the order on Turkey, because its request "is limited solely to the effect of Commerce's recalculation of Colakoglu's dumping margin." Opp'n at 28.  Erdemir overlooks that the statute affords the Commission discretion to cumulate imports from subject countries in a CCR, just as in a five-year review, so long as the reviews are initiated on the same day, and it determines that imports from the subject sources would be likely to compete with each other and with domestic like products in the U.S. market.  19 U.S.C. § 1675a(a)(7).  The Commission has already exhaustively addressed the cumulation issues in its Five-Year Review and found that these prerequisites are met and that cumulation is appropriate. *See* Five-Year Review Determination, USITC Pub. 5380 at 19-67.  Under Erdemir's theory, however, any importer would be able to escape continuation of an order based on cumulated likely effects found in a five-year review simply by filing a request for a CCR seeking a separate

single country analysis.[5]

Likewise unavailing is Erdemir's contention that this case cannot be moot and duplicative of the Five-Year Review because Erdemir allegedly "did not receive full consideration of the issues it raised in the CCR request." Opp'n at 29. Erdemir's assertion is not borne out. As discussed above, the Commission excluded Colakoglu's exports from the volumes of imports, and therefore did assure that this "changed circumstance" was fully taken into account in conducting its full Five-Year Review. *See* Five-Year Review Determination, USITC Pub. 5380 at 9-10 n.40. In addition, the Commission explained in its Final Decision not to initiate a CCR why it rejected Erdemir's request for a CCR. *Denial of Request to Institute Section 751(b) Review or Reconsideration Proceeding Concerning Commission's Affirmative Determination in Inv. No. 731-TA-1296 (Final) (Turkey)*, 87 Fed. Reg. 73,331, 73,332 (PR 356) (Exhibit A to ITC Motion) ("Final Decision"). Thus, contrary to Erdemir's allegation (Opp'n at 2), the Commission majority discussed the SAA's language regarding reconsideration of its determinations when Commerce changes its dumping margins:

> We note that our finding is consistent with the Statement of Administrative Action to the Uruguay Round Agreements Act (SAA) and statutory provisions, in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis.

Final Decision, 87 Fed. Reg. at 73,332 (PR 365).

The Commission also explained why the Commission cannot reconsider its negligibility

---

[5] In finding in its Five-Year Review Determination that subject imports from Turkey were not likely to have no discernible adverse impact if the order were revoked, the Commission observed that hot-rolled steel imports from Turkey were present in the U.S. market in the latter part of the period of review, and noted that subject producer Habas added 2.0 million metric tons of capacity in 2023. Five-Year Review Determination, USITC Pub. 5380 at 47-48.

finding in a CCR:

> {T}he result that Erdemir seeks—reexamination of the Commission's original negligibility finding—is not possible in a changed circumstances review because negligibility is not a factor for the Commission to consider under the statute in a changed circumstances review. A changed circumstances review involves a forward-looking inquiry that considers whether in view of changed circumstances an order is no longer needed to prevent the continuation or recurrence of material injury; it does not provide an opportunity for the Commission to reconsider and amend its original injury determination. *Compare* 19 U.S.C. 1675a(a) *with* 19 U.S.C. 1673d(b)(1) & 1677(24).

Final Decision, 87 Fed. Reg. at 73,332 (PR 365).

Likewise, the Commission explained that Erdemir could have challenged the Commission's original affirmative injury determination concerning Turkey by appealing it, and then moving to stay that appeal until the litigation concerning Commerce's final antidumping determination was resolved:

> There was a path for Erdemir to avail itself to preserve its rights to obtain a reexamination of the Commission's original determination in light of the subsequent successful appeal of Commerce's final original determination that resulted in a de minimis dumping margin for Colakoglu and exclusion of imports from Colakoglu from the scope of Commerce's final affirmative antidumping duty determination. The potential impact on Erdemir at the time that Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was known to Erdemir at that time, and in fact, Erdemir joined Colakoglu in appealing Commerce's original determination. Erdemir did not appeal the Commission's final affirmative material injury determination which would have provided it with the opportunity to preserve its rights for further reconsideration of the merits based on the outcome of Commerce's appeal. *Accord Borlem S.A. Empreedimentos Industriais* v. *United States,* 913 F.2d 933, 939 (Fed. Cir. 1990); *LG Electronics, Inc.* v. *U.S. International Trade Commission,* Slip Op. 14-8, 2014 WL 260603, at *3 (CIT Jan. 23, 2014).

Final Decision, 87 Fed. Reg. at 73,333 (PR 365).

Thus, the Commission in fact gave full consideration to each of Erdemir's claims, and

explained why it was rejecting them.  While Erdemir may believe some of these explanations are "underdeveloped," Opp'n at 20, that does not change the fact that Final Decision demonstrates that the Commission considered Erdemir's CCR request, just as the Five-Year Review Determination demonstrates that the Commission fully considered Erdemir's substantive arguments.

> **D.    A Remand Would Not Grant Erdemir the Relief It Seeks, and Would Waste the Resources of the Court and the Parties**

If the Court were to grant Erdemir the relief it seeks and direct the Commission to "conduct a CCR to reconsider the negligibility decision in the AD injury investigation," the Commission's remand determination would not result in a determination that hot-rolled steel imports from Turkey are negligible, as Erdemir requests.  Compl. at Prayer for Relief ¶ 3.  This is because, as the Commission explained in its Motion and again above, it is required to assess whether revocation of an order "would be likely to lead to a continuation or recurrence of material injury within a reasonably foreseeable time."  19 U.S.C. §§ 1675(b)(1)(A) & 1675a(a)(1); ITC Motion at 14-15.  The CCR provision of the statute directs the Commission to assess whether: (i) the likely volume of the subject imports will be significant if the order is revoked, (ii) whether the subject imports are likely to significantly undersell the domestic merchandise and significantly depress or suppress domestic prices if the order is revoked, and (iii) whether the subject imports will have a significant impact on the domestic industry, taking into account the trade and financial indica of the industry's condition.  19 U.S.C. § 1675a(a)(1).  The statute does not list negligibility as a factor for the Commission to consider.  *Id*.

Given the statutory scheme, even if the Commission were to conduct a CCR of the antidumping duty order on imports from Turkey, it would simply perform the same analysis that it already undertook in the five-year review of the hot-rolled steel orders.  As the Commission

previously explained, the applicable legal standards in a CCR are identical to those of a five-year review, and the Commission has already undertaken the latter analysis.  ITC Motion at 13-14.

## III.    CONCLUSION

For the reasons set forth in the Commission's Motion and above, the Commission respectfully requests that this Court dismiss Erdemir's Complaint in its entirety pursuant to USCIT Rule 12(b)(1) because it does not possess jurisdiction to decide Erdemir's moot case. Alternatively, the case should be dismissed because Erdemir's Complaint is based on the erroneous assumption that the Commission can or must conduct a retroactive CCR; therefore, the Complaint fails to state a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(6).

Respectfully submitted,

Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

*/s/ Ravi D Soopramanien*
Michael K. Haldenstein
Ravi D. Soopramanien
Attorney-Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3002
ravi.soopramanien@usitc.gov

*Attorneys for Defendant United States International Trade Commission*

Dated: August 31, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures 2(B)(1) and 2, I hereby certify that the attached

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** contains 4983

words, according to the word-count function of the word processing system used to prepare this

motion and memorandum (Microsoft Office 365 ProPlus).

*/s/ Ravi D. Soopramanien*
Ravi D. Soopramanien
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3002
Facsimile: (202) 205-3111
ravi.soopramanien@usitc.gov

Date: August 31, 2023