Slip Op. 24-82

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>Defendant,<br><br>and<br><br>**UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES, LLC and NUCOR CORPORATION,**<br><br>Defendant-Intervenors. | Before: Timothy M. Reif, Judge<br><br>Court No. 22-00350 |

## <u>OPINION</u>

[Granting defendant's motion to dismiss.]

Dated:  July 22, 2024

David L. Simon, Law Office of David L. Simon, PLLC, of Washington, D.C., argued for plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş.  With him on the brief was Mark B. Lehnardt.

Frank H. Morgan, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for defendant U.S. International Trade Commission.  With him on the brief were Andrea C. Casson, Assistant General Counsel for Litigation, and Michael K. Haldenstein, Attorney-Advisor.

Jeffrey D. Gerrish, Schagrin Associates, of Washington, D.C., argued for defendant-intervenors.  With him on the brief were Roger B. Schagrin and Saad Y. Chalchal, Schagrin Associates, of Washington, D.C., for defendant-intervenors Steel Dynamics, Inc. and SSAB Enterprises, LLC, Alan H. Price, Christopher B. Weld, and Theodore P.

Brackemyre, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Corporation, Stephen P. Vaughn, Neal Reynolds, and Barbara Medrado, King & Spalding LLP, of Washington, D.C., for defendant-intervenor Cleveland-Cliffs Inc., and Thomas M. Beline and Sarah E. Shulman, Cassidy Levy Kent LLP, of Washington D.C., for defendant-intervenor United States Steel Corporation.

Reif, Judge:  Before the court is the motion to dismiss of defendant U.S. International Trade Commission (the "Commission").  Plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("plaintiff" or "Erdemir") invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1581(c) and alleges that the refusal of the Commission to conduct a changed circumstances review ("CCR") to reconsider the negligibility decision in the Commission's investigation of hot-rolled steel flats from Turkey is unsupported by substantial evidence and not in accordance with law.  Compl. ¶ 37, ECF No. 4.  Plaintiff asserts that the Commission "has the authority to conduct a changed circumstances review for purposes of retroactive correction of errors in the AD negligibility determination in the original investigation."  Id. ¶ 37.  Plaintiff asks the court to set aside the Commission's denial of plaintiff's request for a CCR and remand to the Commission to conduct such a review and reconsider whether the volume of imports of hot-rolled steel from Turkey is above the negligibility threshold.  Id. at 12.  The Commission has filed a motion to dismiss, asserting that (1) the court lacks subject matter jurisdiction because plaintiff's claim is moot and (2) plaintiff has failed to state a claim upon which relief may be granted.  Def.'s Mot. to Dismiss ("Def. Br."), ECF No. 38.

For the reasons discussed below, the court grants the Commission's motion to dismiss.

# BACKGROUND

**I.    The final determination of the Department of Commerce of sales at less than fair value and the Commission's final affirmative determination of material injury**

In August and September 2015, the U.S. Department of Commerce ("Commerce") initiated and the Commission instituted investigations in response to petitions filed on behalf of the domestic industry requesting the imposition of antidumping and countervailing duties on imports of hot-rolled steel flat products from various countries (including Turkey).  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (ITC Aug. 18, 2015); *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair-Value Investigations*, 80 Fed. Reg. 54,261 (Dep't of Commerce Sept. 9, 2015); *Certain Hot-Rolled Steel Flat Products from Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54,267 (Dep't of Commerce Sept. 9, 2015).

On October 1, 2015, the Commission made an affirmative preliminary determination that there was a reasonable indication that an industry in the United States was materially injured due to imports of hot-rolled steel flat products from the subject countries.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, USITC Pub. 4570, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Oct. 2015), at 3.

The Commission preliminarily determined also that the volume of imports of hot-rolled steel from Turkey was above the three percent threshold for exclusion from the investigation on grounds of negligibility.[1]  *See id.* at 13.

On August 12, 2016, Commerce published its affirmative final countervailing duty determination for Turkey.  *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433 (Dep't of Commerce Aug. 12, 2016).

Commerce found that Çolakoğlu Dis Ticaret A.Ş. ("Colakoglu") — another Turkish producer of hot-rolled steel — received a de minimis level of countervailable subsidies.  *Id.* at 53,434.  However, Commerce made an affirmative determination because it calculated a 6.01 percent net countervailable subsidy rate for Erdemir.  *Id.*  All remaining Turkish producers and exporters were assigned Erdemir's 6.01 percent CVD rate.  *Id.*  Also on August 12, 2016, Commerce published its affirmative final determination of sales at less than fair value for Turkey.  *Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Determination of Sales at Less Than Fair Value* ("*Final Determination of Sales at Less Than Fair Value*"), 81 Fed. Reg. 53,428 (Dep't of Commerce Aug. 12, 2016).  Commerce determined that Colakoglu was selling hot-rolled steel in the United States for less than fair value and calculated a weighted-average dumping margin of 7.15 percent.  *Id.* at 53,429.

---

[1] 19 U.S.C. § 1677(24)(A)(i) defines "negligible imports" as "imports from a country of merchandise corresponding to a domestic like product identified by the Commission" that "account for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period for which data are available that precedes" the filing of a petition under 19 U.S.C. § 1673a(b) or the initiation of an investigation under 19 U.S.C. § 1673a(a).

On September 29, 2016, the Commission published its affirmative final determinations that an industry in the United States was materially injured due to imports of hot-rolled steel flat products from the subject countries.[2]  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (ITC Sept. 29, 2016).  As to Turkey, the Commission explained that "imports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation" because Colakoglu's final net countervailable subsidy rate was de minimis.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom* ("*Final Determination of Material Injury*"), USITC Pub. 4638, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Sept. 2016), at 13.

Colakoglu's imports were excluded from the Commission's injury analysis in the CVD investigation because "Colakoglu received a *de minimis* subsidy margin."  *Id.*  As a result of the exclusion of Colakoglu's imports, the volume of imports from Turkey subject to the CVD investigation fell below the negligibility threshold.[3]  *Id.*  Because subsidized

---

[2] When evaluating whether the domestic industry is materially injured by reason of imports sold at less than fair value, the Commission is required to consider "the volume of imports of the subject merchandise," "the effect of imports of that merchandise on prices in the United States for domestic like products," and "the impact of imports of such merchandise on domestic producers of domestic like products."  19 U.S.C. § 1677(7)(B)(i)(I)-(III).  Under § 1677(7)(C)(iii)(V), in examining the impact on the affected domestic industry, "the Commission shall evaluate all relevant economic factors . . . including, but not limited to . . . the magnitude of the margin of dumping."

[3] Plaintiff states in its complaint that Colakoglu is the "largest shipper" of hot-rolled steel from Turkey.  Compl. at 1.

imports from Turkey were negligible, the Commission "terminate[d] the countervailing duty investigation on hot-rolled steel from Turkey." *Id.* at 14; *see also* 19 U.S.C. § 1677(24)(A)(i).[4]

However, because Commerce determined that Colakoglu's imports were sold at less than fair value, *Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. at 53,428, Colakoglu's imports were included in the Commission's negligibility analysis for purposes of its antidumping duty determination. *See Final Determination of Material Injury*, USITC Pub. 4638 at 13. The Commission determined that the volume of imports subject to the AD investigation exceeded the negligibility threshold. *Id.*

As a result, the Commission's final determination of material injury applied only to dumped imports from Turkey — not to subsidized imports from Turkey. *Id.* at 3. The Commission analyzed subject imports on a cumulated basis, meaning that the Commission cumulated dumped imports from Turkey with subject imports from Australia, Brazil, Japan, Korea, the Netherlands and the United Kingdom found by Commerce to be dumped or subsidized. *Id.* at 14-21. The Commission determined that an industry in the United States was materially injured by reason of the cumulated subject imports. *Id.* at 21, 39-47, 52.

On October 3, 2016, Commerce published the final AD order on imports of hot-rolled steel flat products from Turkey. *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for*

---

[4] 19 U.S.C. § 1673d(b)(1) requires that "[i]f the Commission determines that imports of the subject merchandise are negligible, the investigation shall be terminated."

*Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016).

Commerce calculated revised dumping margins of 6.77 percent for Colakoglu, 4.15 percent for Erdemir and 6.41 percent for all other producers or exporters. *Id.* at 67,965.

## II.    Colakoglu and Erdemir challenged Commerce's final determination

Colakoglu and Erdemir appealed Commerce's final determination of sales at less than fair value. On April 13, 2020, this Court entered judgment sustaining Commerce's third remand redetermination, in which Commerce calculated a zero percent AD duty margin for Colakoglu. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 44 CIT __, 435 F. Supp. 3d 1378 (2020)*; see also Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 43 CIT __, 415 F. Supp. 3d 1216 (2019); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 357 F. Supp. 3d 1325 (2018); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 308 F. Supp. 3d 1297 (2018).[5]

On May 15, 2020, Commerce published an amended final determination with recalculated weighted-average dumping margins. *Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final*

---

[5] Nucor Corporation, one of the six domestic producers that filed petitions in the hot-rolled steel investigations, appealed the Commission's negligibility determination in the CVD investigation. *Nucor Corp. v. United States*, 42 CIT __, 296 F. Supp. 3d 1276 (2018). On February 28, 2018, this Court affirmed the Commission's negligibility determination. *Id.*

*Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping*

*Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty*

*Administrative Reviews, in Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15,

2020).  Those margins were zero percent for Colakoglu, 2.73 percent for Erdemir and

2.73 percent for all other producers or exporters.  *Id.* at 29,400.

Commerce partially revoked the AD order to exclude merchandise produced and

exported by Colakoglu because Colakoglu's dumping margin was reduced to zero.[6]  *Id.*

at 29,399, 29,400 ("Commerce is hereby excluding merchandise produced and

exported by [Colakoglu] from the Order.").

Therefore, Colakoglu was successful in its appeal of Commerce's final

determination of sales at less than fair value.  However, none of the Turkish

respondents challenged the Commission's final material injury determination concerning

dumped imports from Turkey.

## III.  Plaintiff requested that the Commission institute reconsideration proceedings or a changed circumstances review

After Commerce excluded Colakoglu from the AD order on hot-rolled steel from

Turkey — and with appeals of the USCIT judgment still pending before the U.S. Court of

Appeals for the Federal Circuit ("Federal Circuit") — Erdemir requested reconsideration

of the Commission's original material injury determination.  Def.'s Ex. C, Letter from

---

[6] Both the United States and domestic producers appealed the judgment of the USCIT.
On December 18, 2020, the United States voluntarily dismissed its appeal.  *Ereğli
Demir ve Çelik  Fabrikaları T.A.Ş. v. United States*, No. 20-1999, Mandate Order (Fed.
Cir. Dec. 18, 2020).  Then, on June 4, 2021, domestic producers voluntarily dismissed
their appeal.  *Ereğli Demir ve Çelik  Fabrikaları T.A.Ş. v. United States*, 20-2003,
Mandate Order (Fed. Cir. June 4, 2021), docketed in Ct. No. 16-00218, ECF No. 161
(Ct. Int'l Trade June 4, 2021).

Erdemir to the Commission, Request for Reconsideration ("Letter Request for

Reconsideration") (May 18, 2020) at 5, PR 1 ("Erdemir respectfully requests that the

Commission reopen the . . . investigations to consider the impact of Çolakoğlu's

exclusion from the [AD] order.").  Plaintiff asked the Commission to consider whether,

"after the exclusion of Çolakoğlu's imports from the universe of unfairly traded imports

[from Turkey], the remaining volume of HRS from Turkey sold at LTFV is below the

negligibility threshold and that the other conditions for a negative injury determination

are met, as was determined in the CVD injury investigation."  *Id.* at 5.

Also in that letter, plaintiff requested in the alternative that the Commission treat

Colakoglu's exclusion from the AD order as a changed circumstance and treat

Erdemir's letter as a request for a CCR.  *Id.* at 6.  However, plaintiff's letter did not

analyze whether the requirements for conducting a CCR had been met.  *Id.*; *see also* 19

U.S.C. § 1675(b)(1); 19 C.F.R. § 207.45(a) ("All requests shall set forth a description of

changed circumstances sufficient to warrant the institution of a review . . . .").  Plaintiff

noted in its letter that "in the past 'the Commission determined that reconsideration was

a more appropriate procedure for review of the original determinations.'"  Letter Request

for Reconsideration at 6 (citing *Ferrosilicon from Brazil, China, Kazakhstan, Russia,*

*Ukraine, and Venezuela*, USITC Pub. 3218, Inv. Nos. 303-TA-23 & 731-TA-21-27 (Aug. 1999), 1999 WL 957691, at *4).[7]

On September 1, 2021, Commerce initiated and the Commission instituted the first sunset review of the AD and CVD orders on hot-rolled steel flat products from multiple countries. *Initiation of Five-Year (Sunset) Reviews*, 86 Fed. Reg. 48,983 (Dep't of Commerce Sept. 1, 2021); *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (ITC Sept. 1, 2021), PR 5; *see also* 19 U.S.C. § 1675(c).

Then, on September 10, 2021, after the United States and domestic producers had voluntarily dismissed their appeals of the judgment of the USCIT in the challenges to the Commerce determination, Erdemir requested that the Commission institute a

---

[7] On July 22, 2020, plaintiff sent the Commission a follow up to its letter of May 18, 2020. Def.'s Ex. D, Letter in Support of Request for Reconsideration ("Letter in Support of Request for Reconsideration") (July 22, 2020), PR 2. In its letter of July 22, 2020, plaintiff stated that the purpose of the letter was "to renew [plaintiff's] May 18, 2020, request . . . to inform the Commission that the Court of Appeals for the Federal Circuit has now docketed an appeal of the Court of International Trade decision that was the basis for our May 18, 2020 request . . . [and] to explain why the pendency of the CAFC appeal should not render Erdemir's current request premature." *Id.* at 1-2. Plaintiff argued that the Commission should not wait until the completion of the appeal to the Federal Circuit to reconsider the Commission's material injury determination because the completion of the appellate process would coincide with the sunset review, scheduled to begin in September 2021. *Id.* at 3. According to plaintiff in that letter:

> [T]he sunset review will not afford the Commission an opportunity to review the present matter, as the import statistics from the original investigation will not be part of the sunset review record. Thus, folding the present matter into a sunset review would prevent Erdemir from ever having its claim heard, and, in effect, would cause irreparable harm by denying Erdemir any possibility of review of the injury determination.

*Id.*

CCR to revisit its affirmative final determination of material injury in the original investigation.  Def.'s Ex. F, Request for Commission Changed Circumstances Review ("Pl. Request for CCR") (Sept. 10, 2021), PR 18.  Erdemir argued that "Commerce's recalculation of Colakoglu's antidumping duty margin to zero percent and its exclusion from the antidumping duty order as a result of judicial review constitute significantly changed circumstances from those in existence at the time of the original investigation because the facts underlying the Commission's negligibility determination completely changed."  *Hot-Rolled Steel Flat Products from Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination* ("*Request for Comments*"), 86 Fed. Reg. 68,512, 68,513 (ITC Dec. 2, 2021), PR 105.  In that letter, Erdemir argued also that the exclusion of Colakoglu from the AD order "cannot effectively be considered in the sunset review currently underway, because specific imports [sic] data from the original investigation will not be part of the sunset review record."  Pl. Request for CCR at 8 (footnote omitted).

On December 2, 2021, the Commission published a notice in the Federal Register requesting comment on "whether the alleged changed circumstances . . . are sufficient to warrant institution of a review" and "the degree to which any changed circumstances proceeding concerning hot-rolled steel flat products from Turkey can be conducted in conjunction with the five-year review of the antidumping duty order on the same subject merchandise."  *Request for Comments*, 86 Fed. Reg. at 68,513.

The Commission then received a joint submission from Cleveland-Cliffs, Nucor, SDI, SSAB and the United States Steel Corporation opposing the institution of a CCR.

*See Hot-Rolled Steel Flat Products from Turkey; Denial of Request To Institute a*

*Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or*

*Reconsideration Proceeding Concerning the Commission's Affirmative Determination in*

*Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey*

("*Denial of Request for CCR and Reconsideration Proceeding*"), 87 Fed. Reg. 73,331,

73,332 (ITC Nov. 29, 2022).  The Commission received also submissions from both the

Turkish government and plaintiff in support of instituting a CCR.  *Id.* at 73,332.

      In plaintiff's comments in support of its request for a CCR, plaintiff cited to certain

language in the Statement of Administrative Action in which, according to plaintiff,

Congress stated expressly that recalculations by Commerce of the dumping margin in

the original investigation were a sufficient reason to conduct a CCR, if the party seeking

such a review establishes that it is warranted.  Def.'s Ex. L, Erdemir Comments on

Institution of Changed Circumstances Review (Jan. 3, 2022) at 8, PR 109 (citing

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*,

H.R. Doc. No. 103-316, vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184

("SAA")).

**IV.    The Commission conducted full sunset review and denied plaintiff's request for reconsideration or a changed circumstances review**

On December 6, 2021, the Commission determined to conduct full sunset reviews of the hot-rolled steel orders.[8]  *Notice of Commission Determination to Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom* ("*Notice of Full Five-Year Reviews*"), 87 Fed. Reg. 3,123 (ITC Jan. 20, 2022), PR 116.  In those reviews, plaintiff maintained that the Commission should conduct a CCR or reconsideration proceeding so that the Commission could correct its negligibility analysis in light of the exclusion of Colakoglu from Commerce's AD order.  *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom* ("*Sunset Review Determination*"), USITC Pub. No. 5380, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), at 26 n.132 (Nov. 2022), PR 355.  Plaintiff argued also that the Commission should reverse its original

---

[8] 19 U.S.C. § 1675(c)(5) requires the Commission to complete a full sunset review "within 360 days after the date on which a review is initiated," unless there is no response to the notice of initiation, or the response to the notice of initiation is inadequate.  *See* 19 U.S.C. § 1675(c)(3)(A)-(B).  On September 1, 2021, the Commission published notice of the institution of the sunset reviews.  *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057, 49,058 ("The Commission will assess the adequacy of interested party responses to this notice of institution to determine whether to conduct a full review or an expedited review.").  Then, on December 6, 2021, "the Commission determined that it should proceed to full reviews in the subject five-year reviews" because "the domestic interested party group response and the respondent interested party group responses from Australia, Brazil, Japan, the Netherlands, Turkey, and the United Kingdom to its notice of institution . . . were adequate."  *Notice of Full Five-Year Reviews*, 87 Fed. Reg. at 3,124.

negligibility determination involving dumped imports from Turkey in the sunset reviews.[9]
*Id.*

Then, on November 29, 2022, the Commission "declined to institute [a changed circumstances review] or grant reconsideration." *Denial of Request for CCR and Reconsideration*, 87 Fed. Reg. at 73,331. The Commission noted that, "[a]t the time Erdemir filed its request for a changed circumstance review, the Commission was already conducting a five-year review of the antidumping duty order on hot-rolled steel flat products from Turkey." *Id.* at 73,332. The Commission determined that "[c]onducting a changed circumstances review at the same time as a five-year review would be unwarranted because it would be duplicative of the full five-year review." *Id.* (citing *Eveready Battery Co., Inc. v. United States*, 23 CIT 896, 77 F. Supp. 2d 1327 (1999)). The Commission stated also that "the result that Erdemir seeks — reexamination of the Commission's original negligibility finding — is not possible in a changed circumstances review because negligibility is not a factor for the Commission to consider under the statute in a changed circumstances review." *Id.* The Commission concluded that, because a CCR "involves a forward-looking inquiry," it "does not provide an opportunity for the Commission to reconsider and amend its original injury determination." *Id.* (*comparing* 19 U.S.C. § 1675a(a), *with* 19 U.S.C. §§ 1673d(b)(1), *and* 1677(24)). As a result, the Commission denied Erdemir's request. *Id.*

---

[9] On September 15, 2022, the Commission conducted a public hearing as part of its sunset review. Def.'s Ex. J, Commission Hearing Transcript (Sept. 15, 2022), PR 315. In that hearing, interested parties provided testimony to the Commissioners concerning plaintiff's request for a CCR or reconsideration proceeding. *Id.* at 78:8-16, 81:13-83:17.

In that decision, the Commission noted that Erdemir's comments of January 2022 requesting a CCR included also an alternative request that the Commission institute a reconsideration proceeding. *Id.* The Commission declined to institute a proceeding to reconsider its negligibility analysis and the finding of non-negligibility with respect to the original AD investigation of hot-rolled steel flat products from Turkey. *Id.* at 73,332-73,333.

The Commission explained that its reconsideration authority is reserved for "extraordinary circumstances," such as when reconsideration is necessary to protect the integrity of its proceedings from fraud. *Id.* at 73,332. In the instant proceedings, the Commission determined that there was "no evidence of fraud or other facts that suggest extraordinary circumstances" and therefore concluded that "the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products" did not warrant reconsideration. *Id.* To support that conclusion, the Commission relied on legislative history "in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis."[10] *Id.*

---

[10] Commissioners Kearns and Karpel did not join the Commission's decision on this point. *See Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. at 73,332 n.1. In the view of Commissioners Kearns and Karpel, "it is not clear that 19 U.S.C. [§] 1677(7)(C)(iii)(v) and [§] 1677(35)(C) and the related SAA language address the circumstances presented here" because those provisions and the accompanying language in the SAA pertain to "the 'magnitude of margins of dumping' that the Commission is to consider in its *impact* analysis." *Id.* (emphasis supplied). Here, the Commissioners added, plaintiff had requested that the Commission "reconsider its *negligibility* analysis for purposes of 19 U.S.C. [§] 1673d(b)(1) and 19 U.S.C. [§] 1677(24)." *Id.* (emphasis supplied).

According to the Commission, Erdemir was required to challenge the Commission's affirmative material injury determination in the original investigation, which was the proper "path for Erdemir to avail itself to preserve its rights to obtain a reexamination of the Commission's original determination in light of the subsequent successful appeal of Commerce's final original determination that resulted in a de minimis dumping margin for Colakoglu and exclusion of imports from Colakoglu from the scope of Commerce's final affirmative antidumping duty determination."  *Id.* at 73,333.

The Commission explained that "[t]he potential impact on Erdemir at the time that Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was known to Erdemir at that time, and[,] in fact, Erdemir joined Colakoglu in appealing Commerce's original determination."  *Id.*  The Commission determined, as a result, that "[t]he interests of the finality of the agency's decision are paramount under the circumstances presented."  *Id.*  On this basis, the Commission denied Erdemir's request for reconsideration.  *Id.*

On November 25, 2022, the Commission completed its first sunset review and determined that revocation of the AD order on hot-rolled steel flat products from Turkey would be likely to lead to continuation or recurrence of material injury.  *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (ITC Dec. 2, 2022), PR 357.  The Commission analyzed

subject hot-rolled steel imports from Turkey on a cumulated basis[11] with subject imports

from Australia, Japan, the Netherlands, South Korea, Russia and the United Kingdom

and determined that revocation of the AD order on hot-rolled steel flat products from

Turkey would be likely to lead to continuation or recurrence of material injury.[12] *See*

*Sunset Review Determination*, USITC Pub. No. 5380 at 48, 67; *see also* 19 U.S.C. §

1675a(a)(7).  Thereafter, Commerce published a notice of continuation of the AD order.

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of*

*Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation*

*of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and*

*United Kingdom) and Countervailing Duty Order (Korea) and Revocation Antidumping*

*and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't of Commerce Dec.

22, 2022).

    Plaintiff then brought multiple actions to challenge different decisions made by

the Commission during the course of the proceedings before the agency.  In the instant

---

[11] 19 U.S.C. § 1677(7)(G)(i) requires that the Commission "cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which . . . (I) petitions were filed under section 1671a(b) or 1673a(b) of this title on the same day, (II) investigations were initiated under section 1671a(a) or 1673a(a) of this title on the same day, or (III) petitions were filed under section 1671a(b) or 1673a(b) of this title and investigations were initiated under section 1671a(a) or 1673a(a) of this title on the same day," so long as such imports compete with each other and with domestic like products in the United States market.  However, the statute also prohibits the Commission from cumulatively assessing the volume and effect of imports under clause (i) "from any country with respect to which the investigation has been terminated."  19 U.S.C. § 1677(7)(G)(ii)(II).  This exception — that imports that were the subject of terminated investigations may not be cumulated — "implements the requirements of the [URAA] that negligible or de minimis imports not be cumulated."  SAA at 849.

[12] In its sunset reviews, the Commission indicated that it would address outside of the sunset reviews plaintiff's request for a CCR or a reconsideration proceeding.  *Sunset Review Determination*, USITC Pub. No. 5380 at 48 n.298.

action, plaintiff contends that the Commission has the authority to conduct a CCR for purposes of retroactive correction of errors in the antidumping negligibility determination in the original investigation.  Compl. ¶ 37.  Plaintiff asserts that the Commission's decision not to conduct a CCR is not supported by substantial evidence and otherwise is not in accordance with law.[13]  *Id.*

On June 13, 2024, the court held oral argument.  *See* Oral Arg. Tr., ECF No. 54.

## JURISDICTION AND STANDARD OF REVIEW

Whether a court has subject matter jurisdiction to hear an action is a "threshold" inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  28 U.S.C. § 1581(c) grants the Court "exclusive jurisdiction of any civil action commenced under" 19 U.S.C. § 1516a.  19 U.S.C. § 1516a(a)(1)(B) provides for judicial review of "a determination by the Commission, under section 1675(b) of [title 19], not to review a determination based upon changed circumstances."

In an action to challenge "a determination by the Commission . . . not to review a determination based upon changed circumstances," *id.*, the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* § 1516a(b)(1)(A).

However, "[b]ecause Article III of the Constitution requires that the court adjudicate only a presently pending case or controversy, jurisdiction is improper if the

---

[13] Plaintiff states incorrectly the court's standard of review of the Commission's denial of plaintiff's request for a CCR.  *See* Compl. ¶ 37.  The court is required to hold unlawful the Commission's denial of plaintiff's request for a CCR when that denial is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(A).  The court does not review for substantial evidence the Commission's denial of plaintiff's request for a CCR.  *Id.*

action is moot." *Eveready Battery Co., Inc. v. United States*, 23 CIT 896, 897, 77 F. Supp. 2d 1327, 1329 (1999) (citing *Associacao Dos Industriais de Cordoaria E Redes v. United States*, 17 CIT 754, 759, 828 F. Supp. 978, 984 (1993)).  "A case will be dismissed as moot when the challenge presented to the [c]ourt cannot result in a meaningful remedy."  *Verson v. United States*, 22 CIT 151, 154, 5 F. Supp. 2d 963, 966 (1998).  Moreover, if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot.  *PPG Industries, Inc. v. United States*, 11 CIT 303, 306, 660 F. Supp. 965, 968 (1987) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

With respect to the Commission's 12(b)(6) motion for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff."  *Env't One Corp. v. United States*, 47 CIT __, __, 627 F. Supp. 3d 1349, 1355 (2023) (quoting *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)); *see generally* USCIT Rule 12(b)(6).

"A court may properly dismiss a claim pursuant to [USCIT] Rule 12(b)(6) only if Plaintiff's allegations of fact are not 'enough to raise a right to relief above the speculative level.'"  *VoestAlpine USA Corp. v. United States*, 46 CIT __, __, 578 F. Supp. 3d 1263, 1276 (2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, plaintiff's complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

## DISCUSSION

**I.  Whether plaintiff's request for a changed circumstances review was rendered moot by the sunset review**

### A.  Legal framework

19 U.S.C. § 1675(b)(1)(A) requires that the Commission conduct a review of "a final affirmative determination that resulted in" an AD or CVD order whenever the Commission "receives information . . . or a request from an interested party . . . which shows changed circumstances sufficient to warrant a review."

Section 1675(b)(2)(A) provides the standard that the Commission applies when conducting a CCR:

> [I]n the case of a countervailing duty order or antidumping duty order or finding, [the Commission shall] determine *whether revocation of the order or finding is likely to lead to continuation or recurrence* of *material injury*,

(emphasis supplied).

In addition, § 1675(b)(3)(A) places on the "party seeking revocation of an order" pursuant to a CCR "the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant" revocation of the order.

19 U.S.C. § 1675(c) provides the statutory requirements for a five-year review ("sunset review") of a CVD or AD order of the Commission.  Under 19 U.S.C. § 1675(c)(1), "5 years after the date of publication" of an AD or CVD order the Commission is required to "conduct a review to determine . . . *whether revocation* of the *[order] would be likely to lead to continuation or recurrence of dumping or a countervailable subsidy (as the case may be) and of material injury*."  (emphasis supplied).

19 U.S.C. § 1675a(a)(1) sets out the factors that the Commission is required to consider when determining the likelihood of continuation or recurrence of material injury in either a sunset review or CCR.  The provision requires that the Commission consider "the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked."  *Id.* § 1675a(a)(1).  Section 1675a(a)(6) further provides that in conducting a sunset review or a CCR "the Commission may consider the magnitude of the margin of dumping."

Section 1677(35)(C)(ii)-(iii) describes the "magnitude of the margin of dumping" to be used by the Commission:

> (ii) in making a final determination under section 1673d(b) of this title, the dumping margin or margins most recently published by the administering authority prior to the closing of the Commission's administrative record;
>
> (iii) in a [changed circumstances] review under section 1675(b)(2) of this title, the most recent dumping margin or margins determined by the administering authority under section 1675a(c)(3) of this title, if any, or under section 1673b(b) or 1673d(a) of this title . . . .

19 U.S.C. § 1677(35)(C)(ii)-(iii).

Finally, Congress in the SAA elaborated on the addition of § 1677(35)(C):

> In final staggered investigations, the Commission is to use Commerce's final margins as to the pending investigations.  For other investigations for which cumulation is appropriate, the Commission is to use the most recent dumping margin issued by Commerce at the time the Commission closes its record.  This precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin.  Changes in the original margin could occur due to further proceedings in staggered investigations, corrections of ministerial errors, reconsideration of a determination, or judicial remand.  Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands.  The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin.  The Commission, however, may conduct a changed circumstances

review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes that it is warranted.

SAA at 851.

## B.    Analysis

The court addresses first whether plaintiff's action is moot by reason of the Commission's decision to institute a full sunset review. "A case will be dismissed as moot when the challenge presented to the Court cannot result in a meaningful remedy." *Verson*, 22 CIT at 153, 5 F. Supp. 2d at 966. Moreover, if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot. *PPG Industries, Inc.*, 11 CIT at 306, 660 F. Supp. at 968 (quoting *Powell*, 395 U.S. at 496).

The Commission relies on this Court's decision in *Eveready Battery*, in which the Court held that a challenge of a domestic producer to the Commission's denial of the request by the domestic producer for a CCR was moot by reason of the Commission's institution of a sunset review. Def. Br. at 14 (citing *Eveready Battery*, 23 CIT at 898, 77 F. Supp. 2d at 1329). According to the Commission, "[g]iven the statutory scheme, even if the Commission were to conduct a CCR of the antidumping duty order on imports from Turkey, it would simply perform the same analysis that it already undertook in the five-year review of the hot-rolled steel orders." Def. Reply Br. at 15.

Plaintiff maintains that *Eveready Battery* is inapposite and this case is not moot for multiple reasons: (1) the SAA authorizes a CCR to provide retrospective relief, which the sunset review could not provide, Pl. Br. at 25-26; (2) cumulation of plaintiff's imports with imports of other subject countries "does not make sense" in the instant case, *id.* at

28; (3) the Commission violated its regulations by delaying its response to plaintiff's request for a CCR, *id.* at 26-27; and (4) plaintiff did not receive full consideration of its arguments in the sunset review. *Id.* at 28-29. The court examines each argument in turn.

The court concludes that the institution of the sunset review rendered moot plaintiff's request for a CCR because the sunset review accorded to plaintiff the same potential remedy plaintiff could have received pursuant to a CCR.

In *Eveready Battery*, this Court held that the institution of a sunset review rendered plaintiff's request for a CCR moot because "[t]he purpose of both reviews is to determine whether revocation of an antidumping order is likely to lead to a continuation or recurrence of material injury, and in making this determination the statute provides that the Commission will consider the same criteria [in both reviews]." 23 CIT at 904, 77 F. Supp. 2d at 1334. There, the Commission denied plaintiff's request for a CCR, and plaintiff appealed to this Court. *Id.* at 897, 77 F. Supp. 2d at 1328. Over a year after plaintiff's request for a CCR, the Commission published its determination to conduct a sunset review of the subject merchandise from Greece and Japan "to determine whether revocation of the antidumping duty orders . . . from Greece and Japan would be likely to lead to continuation or recurrence of material injury." *Id.* at 897, 77 F. Supp. 2d at 1328-29. Then, the Commission filed a motion to dismiss plaintiff's appeal of the Commission's denial of plaintiff's request for a CCR. *Id.*

The Court framed the mootness inquiry as follows: "If the Commission's institution of a full sunset review accords Eveready all of the relief it sought by suing for the institution of a changed circumstances review, the current action will be rendered

moot." *Id.* at 898, 77 F. Supp. 2d at 1329 (citing 13A Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure ("*Wright & Miller*") § 3533.2, at 238 (2d ed.

1984)).  The Court noted that, in both a CCR and a sunset review, the Commission is

required to determine "whether revocation of the order is likely to lead to continuation or

recurrence of material injury."  *Id.* (*comparing* 19 U.S.C. § 1675(b)(2)(A), *with* 19 U.S.C.

§ 1675(c)(1)).  The Court concluded that "[t]he standard applied by Commerce and the

Commission in conducting a sunset review is the same as the standard applied in a

changed circumstances review."  *Id.* at 899, 77 F. Supp. 2d at 1330.  Moreover, in both

reviews, "the Commission is required to consider the same factors, namely, the likely

volume of imports, price effects, and impact of imports of the subject merchandise on

the industry if the order is revoked."[14]  *Id.* (citing 19 U.S.C. § 1675a(a)(1)).  For that

reason, "[n]othing would be gained by the institution of a changed circumstances

review," and, as a result, plaintiff's appeal was moot.  *Id.* at 904, 77 F. Supp. 2d at 1334.

Similarly, plaintiff in the instant case challenges the Commission's denial of its

request for a CCR.  Compl. ¶ 1.  As in *Eveready Battery*, the Commission instituted a

sunset review after plaintiff filed a request for a CCR.  *See* Pl. Request for CCR at 1;

*Notice of Full Five-Year Reviews*, 87 Fed. Reg. at 3,124; *Denial of Request for CCR*

*and Reconsideration Proceeding*, 87 Fed. Reg. at 73,331.  And, for the reasons

articulated by the court in *Eveready Battery*, the Commission's decision to institute a

sunset review accorded to plaintiff the same potential remedy that plaintiff could have

---

[14] The Court noted also that a sunset review is "more favorable to [plaintiff] than a
changed circumstances review" because "[t]he only difference of significance in the two
types of reviews" is that the party seeking a changed circumstances review "bear[s] the
burden of persuasion."  *Eveready Battery*, 23 CIT at 899, F. Supp. 2d at 1330.

received had the Commission instituted a CCR.  *See also Wright & Miller* § 3533.2.1 (3d

ed. 2024) ("If full relief is accorded by another tribunal — whether judicial,

administrative, arbitral, or a combination — a proceeding seeking the same relief is

moot.").

### 1.    Whether the SAA authorizes a CCR for a retrospective correction of errors in the AD negligibility determination in the original investigation

Plaintiff argues first that *Eveready Battery* is inapposite to this case because

"[t]he substantive CCR request in *Eveready Battery* is significantly different from

Erdemir's CCR request."  Pl. Br. at 25-26.  Plaintiff notes that the CCR request in

*Eveready Battery* "looked at changes to the market after the order went into effect and

looked forward to the effect of those changes," whereas plaintiff's CCR request "looks

back at the Commission's determination in the original investigation in light of dumping

margins recalculated . . . by Commerce on judicial remand."  *Id.* at 27-28.  According to

plaintiff, its CCR request "fits in a unique category of CCR requests specifically

contemplated by the SAA to revisit a prior Commission determination."  *Id.* at 26.

Plaintiff's position finds no support in the text of the statute or SAA.  To begin, the

text of the statute is clear that a CCR applies a prospective — not retrospective —

standard.  19 U.S.C. § 1675(b)(2)(A) governs a CCR of the Commission and provides:

In conducting a review under this subsection, the Commission shall—

(A) in the case of a countervailing duty order or antidumping duty order or finding*,* determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury.

In addition, § 1675a(a)(1) sets forth the factors that the Commission is required to consider when determining whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury under § 1675(b):

> The Commission shall consider the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked or the suspended investigation is terminated.

Plaintiff's position is inconsistent with the plain meaning of § 1675(b)(2)(A) and § 1675a(a)(1). The language of the statute is clear that a CCR is prospective in nature and focused on what is likely to occur if an order is revoked. The terms of § 1675(b)(2)(A) and § 1675a(a)(1) do not permit the Commission to *reconsider* the negligibility finding in the injury investigation. Moreover, Congress discussed the meaning and purpose of a CCR in different sections throughout the SAA.[15] The SAA instructs that a CCR is a forward-looking, and not backward-looking, inquiry. For example, in contrasting a CCR and a sunset review with critical circumstances determinations, the SAA provides:

> If Commerce determines that critical circumstances exist, then the Commission determines whether retroactive duties are necessary to prevent recurrence of material injury. . . . Critical circumstances determinations focus on whether an order's effectiveness is undermined by increasing shipments prior to the effective date of the order. *Changed circumstances and five-year reviews focus on likely developments if an order is revoked*.

SAA at 876-77 (emphasis supplied).

Similarly, the section of the SAA pertaining directly to CCRs states:

---

[15] By statute, Congress has stated that the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

> In the case of an antidumping or countervailing duty order or finding or a suspended investigation, the Commission must determine whether revocation of the order or finding, or termination of the suspended investigation, is likely to lead to continuation or recurrence of material injury.

SAA at 878.

In addition, the SAA discusses in tandem the "likelihood" standard for both a

CCR and sunset review:

> [S]ection 752 elaborates on the standards for determining whether revocation of an order or termination of a suspended investigation would be likely to lead to a continuation or recurrence of injury, countervailable subsidies, or dumping. The determination called for in these types of reviews is inherently predictive and speculative.

SAA at 883.

Finally, the language of the SAA on which plaintiff relies does not authorize the

backward-looking CCR that plaintiff requests. Rather, that language expressly *prohibits*

such a retrospective analysis in a CCR:

> In final staggered investigations, the Commission is to use Commerce's final margins as to the pending investigations. For other investigations for which cumulation is appropriate, the Commission is to use the most recent dumping margin issued by Commerce at the time the Commission closes its record. This precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin. Changes in the original margin could occur due to further proceedings in staggered investigations, corrections of ministerial errors, reconsideration of a determination, or judicial remand. Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands. The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin. The Commission, however, may conduct a changed circumstances review of its determination *pursuant to Section 751(b)* on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes that it is warranted.

SAA at 851 (emphasis supplied).

Moreover, under 19 U.S.C. § 1675a(a)(6), the Commission "may consider the magnitude of the margin of dumping" in a CCR pursuant to § 1675(b).  On this point, the Commission's sunset review engaged in precisely the same analysis and afforded plaintiff precisely the same opportunity that the Commission would have provided pursuant to a CCR.  In the sunset review, plaintiff received the benefit of the revised de minimis dumping margin that Colakoglu received on remand.  *Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276; *see also* 19 U.S.C. § 1677(35)(C)(iii).  As a result, Colakoglu's imports were excluded from the Commission's analysis of subject imports from Turkey during the sunset review.[16]  *Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276.

        **2.   Cumulation**

Plaintiff maintains also that *Eveready Battery* is inapposite to this case because, according to plaintiff, in the instant case it "does not make sense" to cumulatively assess the effects of subject imports from multiple subject countries in a CCR.  Pl. Br. at 28.  Plaintiff argues that *Eveready Battery* is inapposite because, in *Eveready Battery*, the changed circumstances pertained to the domestic industry and therefore the

---

[16] The Commission stated:

> Based on a remand from the CIT regarding Commerce's original determination, Commerce found a zero antidumping duty margin for Colakoglu and subsequently excluded Colakoglu from the antidumping duty order.  Therefore, it is no longer a producer of subject merchandise and data for it is not included in the data for subject imports from Turkey during the current review.

*Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276.

Commission requested comments as to whether the Commission should review the outstanding AD order on subject imports from both Greece and Japan on a cumulative basis.  *Id.* (citing *Electrolytic Manganese Dioxide from Greece and Japan*, 63 Fed. Reg. 30,254, 30,255 (Dep't of Commerce June 3, 1998); *Eveready Battery*, 23 CIT at 897-901, 77 F. Supp. 2d at 1328-32).  Plaintiff asserts that cumulation would not be appropriate in a CCR of the order on Turkey because plaintiff's request "is limited solely to the effect of Commerce's recalculation of Colakoglu's dumping margin."  *Id.*

      Plaintiff's cumulation argument is not consistent with the statute.  In both a CCR and a sunset review, "the Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States."  19 U.S.C. § 1675a(a)(7); *see also Eveready Battery*, 23 CIT at 901, 77 F. Supp. 2d at 1332 ("[U]nder both a changed circumstances review and a sunset review, the Commission has the authority to cumulatively assess the volume and effect of imports from all countries.").  Section 1675a(a)(7) *prohibits* the Commission in a CCR or

a sunset review from cumulating imports "in a case in which it determines that such

imports are likely to have no discernible adverse impact on the domestic industry."[17]

  The statute is clear with respect to the authority it provides to the Commission in

both a CCR and sunset review to cumulate imports.  Accordingly, plaintiff's argument

fails.

### 3.    The effect of 19 C.F.R. § 207.45

  Next, plaintiff maintains that *Eveready Battery* is inapposite to the instant case

because, in this case, the Commission "violated its own regulations" by delaying its

response to plaintiff's request for a CCR, whereas in *Eveready Battery*, the Commission

---

[17] In the sunset review, the Commission addressed cumulation and determined that cumulation was appropriate.  *See Sunset Review Determination*, USITC Pub. No. 5380 at 19-67.  In those proceedings, Erdemir argued that "since imports of hot-rolled steel from Colakoglu are not subject merchandise in these reviews, subject imports from Turkey will not have a discernable adverse impact."  *Id.* at 26.  After excluding Colakoglu's data from the review, *id.* at 45 n.276, the Commission received questionnaire responses from two Turkish exporters of hot-rolled steel, plaintiff Erdemir and Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. ("Habas").  *Id.* at 46 n.284.  The Commission noted that Habas added 2.0 million metric tons of capacity in 2023 and that the United States "remains an attractive export market for subject producers in Turkey."  *Id.* at 47.  Moreover, the Commission observed that Turkey "face[d] an antidumping order in the European Union, which may foreclose an important export market for the subject industry."  *Id.* at 48.  The Commission found for those reasons that "it is not likely that there will be no discernible adverse impact if the antidumping duty order on hot-rolled steel from Turkey is revoked."  *Id.*  The Commission subsequently exercised its discretion "to cumulate subject imports from Australia, Japan, the Netherlands, Russia, South Korea, Turkey, and the United Kingdom."  *Id.* at 67.

"promptly published notice" of Eveready's CCR request.[18]  Pl. Br. at 26.  Plaintiff asserts

that its letter of May 18, 2020, was a properly filed CCR request requiring the

Commission to promptly publish notice and request comments under 19 C.F.R. §

207.45(b).  *Id.*  According to plaintiff, the Commission violated its regulations by waiting

until December 3, 2021, to publish notice of plaintiff's CCR request.  *Id.*  Plaintiff argues

further that the Commission "again violated its own regulation by delaying its decision

on whether to initiate the CCR."  *Id.*  Plaintiff notes that the Commission's notice of

December 3, 2021, set a 30-day deadline for filing comments.  *Id.* (citing *Request for*

*Comments*, 86 Fed. Reg. 68,513).  Plaintiff maintains that, under the Commission's

regulations, the Commission had until February 18, 2022 — 45 days after the close of

the comment period — to decide whether to initiate the CCR.  *Id.* (citing 19 C.F.R. §

207.45(c)).  However, plaintiff points out, the Commission did not decline to initiate a

CCR until November 29, 2022.  *Id.* (citing *Denial of Request for CCR and*

*Reconsideration Proceeding*, 87 Fed. Reg. 73,331).  Plaintiff argues that "[t]he

Commission's delay in addressing a CCR request, along with the realities of the time it

takes to appeal a Commerce AD margin calculations [sic], means that — under the

---

[18] 19 C.F.R. § 207.45(b) provides:

> Upon the receipt of a properly filed and sufficient request for a review
> investigation, *the Secretary shall publish* a notice of having received such a
> request in the Federal Register inviting public comment on the question of
> whether the Commission should institute a review investigation.

(emphasis supplied).

Commission's preferred [sic] interpretation — no party could ever successfully seek a CCR."[19]  *Id.* at 27.

Section 207.45(b) requires that the Commission publish notice and invite comment "[u]pon the receipt of a properly filed and sufficient request for a review."  19 C.F.R. § 207.45(b).  Plaintiff's letters of May and July 2020 were neither properly filed nor sufficient requests for a CCR.  Neither letter provided the standard for CCRs or attempted to explain how the recalculated dumping margin constituted "changed circumstances sufficient to warrant a review" of the injury determination.  19 U.S.C. § 1675(b)(1); *see also* 19 C.F.R. § 207.45(a) ("All requests shall set forth a description of changed circumstances sufficient to warrant the institution of a review investigation . . . ."); Def. Br. at 12.  Therefore, the Commission was under no obligation to publish notice and invite public comment under 19 C.F.R. § 207.45(b).[20][21]

By contrast, plaintiff's September 10, 2021 CCR request included an explanation of the changed circumstances as well as the legal standard that the Commission applies when determining whether to institute a CCR.  *See* Pl. Request for CCR at 6-9.

---

[19] On this point, plaintiff notes also that, "[i]n the absence of good cause shown," the Commission "may not review" an order "less than 24 months after the date of publication of the notice of" determination.  Pl. Br. at 27 (citing 19 U.S.C. § 1675(b)(4)).

[20] The court observes that the letters of May and July 2020 were titled "Request for Reconsideration" and "Letter in Support of Request for Reconsideration," respectively.  *Compare* Request for Reconsideration, *and* Letter in Support of Request for Reconsideration, *with* Pl. Request for CCR.  Each letter made only a passing reference to a CCR.  Request for Reconsideration at 7; Letter in Support of Request for Reconsideration at 1.

[21] The Commission argues in addition that plaintiff's letters of May and July 2020 were premature because they were sent before Colakoglu's recalculated dumping margin became final.  Def. Reply Br. at 11.  Specifically, in May and July 2020, the appeal of the USCIT judgment in the Commerce case was still pending before the Federal Circuit.  *Id.*

Accordingly, it was "properly filed and sufficient" under 19 C.F.R. § 207.45(b).  As to this

request, the Commission failed to post notice of its denial within 45 days of the close of

the period for public comment, as required by the Commission's regulations.  19 C.F.R.

§ 207.45(c).  In fact, the Commission did not respond to plaintiff's CCR request until the

November 29, 2022 notice in which the Commission denied both plaintiff's CCR request

and plaintiff's requests for reconsideration — nearly a year after the CCR request.  *See*

*Denial of Plaintiff's Request for CCR and Reconsideration*, 87 Fed. Reg. at 73,331.  As

to the CCR request, the Commission acknowledged the requirement of § 207.45(c)

when it published the November 29, 2022 denial.  *See id.* at 73,333 n.2.  In a footnote in

that notice, the Commission explained that "the additional analysis needed to consider

[plaintiff's] alternative reconsideration request was good cause to exercise [the

Commission's] authority to waive the institution period pursuant to 207.45(c)."  *Id.*  At

oral argument, the Commission elaborated: "The Commission waived the 45-day period

. . . .  The Commission has the authority to do that and it exercised that authority in this

instance."[22]  Oral Arg. Tr. at 36:6-10.

        The Commission's failure to respond in a more timely manner to plaintiff's CCR

request and then to waive perfunctorily the period for response specified in its

regulations was suboptimal.  Transparency and responsiveness are cornerstones of

administrative process under U.S. law.  Agencies are entrusted with these

---

[22] Also at oral argument, the Commission discussed the lack of a response by the
Commission on the record to plaintiff's letters of May and July 2020.  *See* Oral Arg. Tr.
at 39:19-25.  According to the Commission, it "did not ignore [plaintiff's] letters" because
there were "oral communications" that occurred between plaintiff and the agency with
respect to those letters.  *Id.* at 39:19-40:7.

responsibilities by Congress and should treat them at all times as of utmost priority, regardless of the circumstances.

In this case, however, none of the Commission's actions impaired plaintiff's opportunity to be heard.  The failure of the Commission to post within 45 days after the close of the period for public comment its denial of plaintiff's request for a CCR and the perfunctory nature of the Commission's decision to waive that timeframe is at most harmless error.  *See Timken Co. v. Regan*, 4 CIT 174, 179-81, 552 F. Supp. 47, 51-53 (1982) (holding that agency action should not be disturbed in the event of a harmless procedural error, especially where there is no resulting prejudice).

### 4.    Whether plaintiff received full consideration of the issues it raised in the properly filed CCR request

The court examines next whether plaintiff received full consideration of the issues it raised in its CCR request.  Plaintiff contends that the Commission's decision to institute a full sunset review did not moot plaintiff's CCR request because "Erdemir did not receive full consideration of the issues it raised in its CCR request" in the sunset

review.  Pl. Br. at 29.  Plaintiff argues that the Commission in the sunset review

"explicitly did not address issues raised by Erdemir's CCR request."[23]  *Id.*

Plaintiff received full consideration in the sunset review of the issues it raised in

its CCR request.  The sunset review took account of the recalculated dumping margin of

Colakoglu by excluding Colakoglu's imports from the volume of subject imports from

Turkey.  *Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276.  The

Commission in its denial of plaintiff's request for a CCR or reconsideration proceeding

explained its reasoning.  *See Denial of Request for CCR and Reconsideration*

*Proceeding*, 87 Fed. Reg. at 73,332.  The Commission noted first that "[c]onducting a

changed circumstances review at the same time as a five-year review would be

unwarranted because it would be duplicative of the full five-year review."  *Id.* (citing

*Eveready Battery*, 23 CIT at 896, 77 F. Supp. 2d at 1327).  The Commission then

responded to plaintiff's arguments that the Commission might revisit its original finding

of negligibility pursuant to a CCR, noting that plaintiff's request was inconsistent (as

---

[23] In responding to Erdemir's argument that the Commission is authorized to revisit its negligibility finding in the original determination, the Commission stated:

> We note that in asserting that subject imports from Turkey would likely have no discernible adverse impact in the event of revocation, Erdemir has raised several arguments concerning the Commission's negligibility determination in the original antidumping duty investigation with respect to subject imports from Turkey.  It contends that the Commission should revisit that determination either in these reviews, in a changed circumstance review, or in a reconsideration proceeding.  These arguments have also been raised in proceedings outside of these reviews and the Commission has addressed them there.  Five-year reviews are prospective in nature and therefore do not accommodate reconsideration of an original determination.  *See generally* 19 U.S.C. § 1675(c)(1)(C).

*Sunset Review Determination*, USITC Pub. No. 5380 at 48 n.298 (internal citations omitted).

discussed above) with the statute.  *Id.* (*comparing* 19 U.S.C. § 1675a(a), *with* 19 U.S.C. § 1673d(b)(1), *and* § 1677(24)).

Therefore, the Commission addressed fully plaintiff's arguments that the Commission could conduct a CCR to reconsider the Commission's negligibility determination in the original injury investigation.  The Commission concluded that the statute does not permit the Commission to use a CCR as a vehicle to reconsider the Commission's finding of non-negligibility in the investigation.  *Id.*  For that reason, the Commission concluded that the institution of the full sunset review rendered moot plaintiff's request for a CCR.  *Id.*

In sum, the court concludes that the institution of the full sunset review of the AD order rendered moot plaintiff's request for a CCR.

## CONCLUSION

For the reasons discussed above, the court grants the Commission's motion to dismiss for lack of subject matter jurisdiction.  Judgment will enter accordingly.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated:      July 22, 2024
New York, New York